[No. A034672. First Dist., Div. Four. Oct. 30, 1986.]

DANNY CHARLES BARNES, JR., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Jeff Brown, Public Defender, Melody Fujimori and Estella W. Dooley, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Dane R. Gillette and Ann K. Jensen, Deputy Attorneys General, for Real Party in Interest.

## Opinion

**CHANNELL, J.**—Petitioner Danny Charles Barnes, Jr., was confined in Atascadero State Hospital after being found not guilty by reason of insanity. In a case of first impression, he seeks a writ of mandate to require respondent superior court to afford him a jury trial on the issue of whether he should be placed in a local mental health program for one year. (Pen. Code, § 1026.2, subd. (e).)[1] Under current law,[2] Barnes must complete the one-year program before a determination may be made of whether he has been restored to sanity, entitling him to full release. (*Ibid.*) Having concluded that Barnes is not entitled to a jury trial at this preliminary stage of the proceedings, we deny the petition for a writ of mandate.

### I. Facts

Petitioner Danny Charles Barnes, Jr., was charged with assault with intent to commit a sex offense (§ 220), false imprisonment (§ 236), assault with a deadly weapon (§ 245, subd. (a)), and a firearm enhancement (§ 12022). In 1980, he was found not guilty by reason of insanity and committed to Atascadero State Hospital for a maximum term of confinement of eight years and eight months, or until his sanity has been restored.

In 1983 and 1985, Barnes applied for release—contending that his sanity was restored—pursuant to former section 1026.2. On both occasions, juries found that Barnes had not met his burden of proof. In 1986, applying the present version of section 1026.2, respondent Superior Court for the City and County of San Francisco refused to grant Barnes's demand to have a jury determine whether he was suitable for one-year placement in a local mental health program. The superior court found that, under present law, section 1026.2 does not require a jury trial at this stage of the proceedings. Barnes petitioned this court for a writ of mandate to compel the superior court to afford him a jury trial on this question, on due process and equal protection grounds. We issued an alternative writ to allow the parties to argue this matter.

### II. Discussion

Section 1026.2 states the procedure by which a person, committed to a state hospital after having been found not guilty of a criminal offense by

---

[1] All statutory references are to the Penal Code, unless otherwise indicated.

[2] The version of section 1026.2 at issue is only operative during the 1986-1988 calendar years. (§ 1026.2, subd. (m).)

reason of insanity, may be released on the ground that he or she has been restored to sanity. The person applies for release to the superior court of the county from which the commitment was made. (§ 1026.2, subd. (a).) Once the person has served an initial 180-day commitment period (§ 1026.2, subd. (d)), the court must hold a "hearing" to determine if the applicant "would no longer be a danger to the health and safety of others, including himself or herself, if under supervision and treatment in the community." (§ 1026.2, subd. (e).) If the court makes this determination, it must order the applicant placed in an appropriate local mental health program for one year. All or a substantial portion of the program must include outpatient supervision and treatment, with the court retaining jurisdiction over the applicant. At the end of one year, the court must conduct a "trial" to determine if the applicant's sanity has been restored—that is, if "the applicant is no longer a danger to the health and safety of others, including himself or herself." The court has no authority to determine whether the applicant has been restored to sanity until he or she has completed one year in the local program. (*Ibid.*) "If the *court* denies the application to place the [applicant] in an appropriate local mental health program or if restoration of sanity is denied, no new application may be filed by the [applicant] until one year has elapsed from the date of the denial." (§ 1026.2, subd. (j), italics added.) During the year when the applicant is placed with the local mental health program, he or she may be returned to the state facility after a hearing if determined dangerous to others while in the program. (§ 1609.)[3]

Subdivision (e) of section 1026.2 sets up a two-step process for processing an application for release: first, a determination of whether the applicant should be placed in a local program, and later, after a year in such a program, a determination of whether the applicant's sanity has been restored. (*Ibid.*) Under an earlier version of this provision—one that did not require the one-year placement period—the California Supreme Court found that a jury trial on the issue of restoration of sanity was constitutionally mandated. (*In re Franklin* (1972) 7 Cal.3d 126, 148-149 [101 Cal.Rptr. 553, 496 P.2d 465]; see former § 1026a [amended and renumbered Stats. 1979, ch. 1114, § 2, p. 4051].) Under the present law, until the applicant satisfies the threshold test at the first proceeding, he or she will not be placed in the local program and will not reach a jury on the ultimate issue of restoration of sanity. (§ 1026.2, subd. (e); see *In re Franklin, supra,* 7 Cal.3d at pp. 148-149.) For this reason, Barnes contends that, under *Franklin,* a jury must also make the initial determination of whether an applicant should be placed in the local program in order for the statutory procedure to comply with due

---

[3]Barnes contends that section 1609 would give him a right to a jury trial on a motion to *revoke* placement with a local mental health program. (See § 1610; Welf. & Inst. Code, § 5352.1.) Barnes's petition presents a placement issue, rather than a revocation of placement question; as such, we do not consider it necessary to decide whether this contention is correct.

process and equal protection. (See U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.)

■ Initially, we note that section 1026.2 is silent on whether a jury trial is required for either of the two proceedings described in subdivision (e). Clearly, the statute anticipates that an applicant must face two proceedings, each with its own test. The first proceeding—at which the issue is whether the applicant would not be dangerous if under supervision and treatment— requires the applicant to satisfy a significantly lesser test than he or she must meet at the second proceeding, when the issue is whether the applicant would not be dangerous if unconditionally released. (§ 1026.2, subds. (e), (k).) Unless the applicant meets this threshold test, he or she will not advance to the second proceeding. (§ 1026.2, subd. (e).) In addition, *within the same subsection,* the Legislature describes the first proceeding as a hearing and the second as a trial. (*Ibid.*) The combination of these factors—the differing standards to be applied at the two proceedings, the fact that the test at the initial hearing is a threshold test, and the Legislature's reference to the first proceeding as a hearing and the second as a trial—satisfy us that the Legislature did not intend that the initial determination of the applicant's suitability for local placement should be made by a jury.[4]

■ Having determined that the Legislature did not intend that a jury make the initial placement decision, we turn to the question of whether a jury trial of this issue is constitutionally mandated. First, Barnes contends that *In re Franklin, supra,* 7 Cal.3d 126 compels this conclusion. We disagree. Clearly, *Franklin* compels a jury trial at the second proceeding, when the issue is whether the applicant has been restored to sanity. (*Id.,* at pp. 148-149.) But the question of suitability for placement in a local mental health program is different from the issue of restoration of sanity. (See § 1026.2, subd. (e) [stating different tests to be applied at each hearing].) As such, *Franklin* is not dispositive of the issue on appeal.

In the alternative, Barnes contends that procedural due process and equal protection require that the issue of suitability for placement be tried before a jury. We find that court trial of the placement question violates neither constitutional principle.

■ As the California Supreme Court has stated, "[d]ue process is a flexible concept; the precise procedures necessary to prevent the arbitrary

---

[4]In fact, the Legislature's statement that the "court" shall determine the issues at both proceedings supports the conclusion that the Legislature intended that *neither* proceeding should be conducted before a jury. (§ 1026.2, subd. (e); see Legis. Com. Rep., Sen. Com. on Judiciary (Apr. 17, 1984) pp. 4-5.) However, *In re Franklin, supra,* 7 Cal.3d at pages 148-149, clearly requires that the second issue be tried before a jury.

deprivation of a constitutionally protected interest vary 'with the subject-matter and the necessities of the situation.'" (*In re Bye* (1974) 12 Cal.3d 96, 103 [115 Cal.Rptr. 382, 524 P.2d 854], cert. den. 420 U.S. 996 [43 L.Ed.2d 679, 95 S.Ct. 1437]; see *In re Franklin, supra*, 7 Cal.3d at p. 135; *Baber* v. *Superior Court* (1980) 113 Cal.App.3d 955, 964-965 [170 Cal.Rptr. 353].) The statutory provisions on commitment of persons found not guilty by reason of insanity represent a "delicate balance between a society's right to be protected from potentially mental ill and dangerous individuals, on the one hand, and the individual's right to be protected from improvident confinement on the other." (*Mills* v. *State* (Del. 1969) 256 A.2d 752, 757 [cited in *In re Franklin, supra*, 7 Cal.3d at pp. 148-149]; see *Baber* v. *Superior Court, supra*, 113 Cal.App.3d at p. 965.) ■ A person who has committed a criminal offense is committed to a state hospital only after a jury has determined that he or she was insane at the time of the commission of the offense. (§ 1026, subd. (a).) After 180 days of commitment, he or she is entitled to petition for release on the ground of restoration of sanity. (§ 1026.2, subd. (d).) The ultimate decision whether the applicant has actually been restored to sanity must be made by a jury. (*In re Franklin, supra*, 7 Cal.3d at pp. 148-149.) If the court denies the applicant's request for placement or if the jury finds against the applicant on the issue of restoration of sanity, a new application may be filed one year later. (§ 1026.2, subd. (j).) An unsuccessful applicant may file a new petition for release each year for an unlimited time. (See *ibid.*) In light of these procedural safeguards, we hold that due process does not require that an applicant pursuant to subdivision (e) of section 1026.2 be given a jury trial at the initial placement proceeding. (See *Baber* v. *Superior Court, supra*, 113 Cal.App.3d at p. 965.)

■ On the equal protection claim, the California Supreme Court has stated that "'[a]lthough the procedures leading to the commitment of various classes of people for treatment or to protect society from them need not be identical in all respects, none may deny to one such class fundamental rights or privileges accorded to another unless a rational basis for the distinction exists.'" (*In re Franklin, supra*, 7 Cal.3d at p. 135.) ■ *Franklin* and the cases cited in it involve restoration of sanity questions, not placement issues. (*Id.*, at pp. 148-149 [jury trial required at restoration hearing]; see *Baxstrom* v. *Herold* (1966) 383 U.S. 107, 110 [15 L.Ed.2d 620, 623, 86 S.Ct. 760] [jury trial required at end of maximum term if state extends commitment pursuant to civil law]; *Mills* v. *State, supra*, 256 A.2d at pp. 757-758 [jury trial required at restoration hearing].) To apply these cases in the context of this equal protection argument would be to mix apples and oranges. Placement decisions are routinely made without the assistance of a jury—sometimes, without even a judicial hearing. (See § 1601, subd. (b) [placement on outpatient status "may be granted *by the court*"]; Welf. &

Inst. Code, § 3151 [administrative board decides whether narcotics addict is suitable for placement on outpatient status].) As no other applicant for outpatient status has been given a right to a jury trial on this question, the Legislature does not violate equal protection if, as here, it chooses to have a court make a placement decision pursuant to subdivision (e) of section 1026.2.

It can be argued that our decision may prevent an applicant from reaching a jury on the issue of restoration of sanity—if he or she cannot satisfy the court at the initial hearing of his or her lack of dangerousness, the applicant would not be placed into a local program and would not eventually go before a jury. (See *In re Reyes* (1984) 161 Cal.App.3d 655, 659 [207 Cal.Rptr. 763] [due process demands that applicants not languish in confinement awaiting the date, if ever, that a court deems it appropriate to hold a restoration of sanity hearing].) However, this argument is unsound for several reasons. First, the test to be applied at the initial hearing is less than that applied at the second. One who cannot satisfy the lesser standard cannot reasonably hope to satisfy the second one. Second, a court's adverse ruling at the first proceeding would be subject to review. (See *In re Slayback* (1930) 209 Cal. 480, 492 [288 P. 769] [habeas corpus].) Finally, the situation presented by section 1026.2 is not unique. Courts often make preliminary determinations that affect the outcome of a jury trial. (See Evid. Code, §§ 402, subd. (b), 403, 405; see also § 1538.5, subds. (b), (c); *People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) Decisions similar to the one presented on appeal, such as a decision to release a prisoner on parole, are often made by administrative boards, without the presence of a judicial officer or a jury. (§§ 3040, 5075.) While a jury must decide the ultimate question of whether an applicant has been restored to sanity once that question is properly before it, neither section 1026.2 nor the state or federal Constitutions compel a jury trial on the threshold placement issue.

There are sound public policy reasons supporting the local placement period for an applicant who contends that his sanity has been restored. The local program provides mental health professionals with a good opportunity to analyze whether the applicant's sanity has, in fact, been restored. For those who will be released after the second proceeding, the program provides a bridge between life in a state institution and unsupervised life in the community. This transition period, in turn, should provide for a lower rate of recidivism, to the ultimate benefit of both the applicant and the public.

The petition for writ of mandate is denied and the alternative writ is discharged.

Anderson, P. J., concurred.

POCHÉ, J.—I respectfully dissent. Unlike the Gulag, in our constitutional system the key to the door of the mental hospital is entrusted solely to a jury. Since 1972 there has been no doubt about that. In that year the California Supreme Court took pains in a unanimous opinion (*In re Franklin* (1972) 7 Cal.3d 126 [101 Cal.Rptr. 553, 496 P.2d 465]) to explain how the United States and California Constitutions protect those who are committed following a finding of not guilty by reason of insanity (NGI). In terms that cannot be misunderstood Justice Burke's opinion spells out that automatic commitment of such a person is constitutional "so long as" the prehearing commitment period extends no longer than is reasonably necessary for institutional examination of his mental condition and thereafter "reasonable opportunity" is provided for a full jury hearing on the question of whether he should be released into society. (*Id.,* at pp. 142-145, 148-149.) The explicit premise throughout the opinion is that California's initial commitment procedures—then a maximum of 90 days (former Pen. Code, § 1026, subd. (a),[1] now 180 days (§ 1026.2, subd. (d))—are valid "only because" the person committed has a reasonable opportunity to obtain his release including "that petitioner is constitutionally entitled to a jury trial on the question of his release." (At pp. 145, 149.)

What has changed statutorily since *Franklin* was decided—as the majority opinion accurately describes—is that a committed person cannot be released unconditionally until he or she has successfully completed a one year stint in an "appropriate local mental health program" and the committed person cannot begin such a local mental health program until he or she convinces a "court" at "a hearing" that he or she "will not be a danger to the health and safety of others, including himself or herself, while under supervision and treatment in the community, . . ." (§ 1026.2, subd. (e).)

Thus the essence of the test (whether the committed person will be a danger to the health and safety of others, etc.) that follows the initial examination period has not changed. What has changed is that: (1) the period for initial testing has been increased from 90 to 180 days; (2) following that initial period a hearing is held to determine whether the committed person is fit for treatment in a local mental health facility; and (3) at the end of the one year of treatment in the local health facility a trial will be had to determine whether the person's sanity has been restored.

Petitioner challenges neither change one nor change three and thus those portions of the majority opinion finding sound public policy reasons for such procedures are irrelevant to the sole issue squarely presented: who determines whether a committed person ever gets into the local mental

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

health program, a judge or a jury. Our Supreme Court has already answered the question in *Franklin*.

The unanimous holding in *Franklin* is worth repeating: (1) the commitment period that precedes the constitutionally required jury trial cannot exceed the time reasonably necessary for institutional examination of the person's mental condition; and (2) *as soon as* the institution completes its examination a "reasonable opportunity" must be provided for a jury determination as to whether he or she should be released to society. (*Id.*, 7 Cal.3d at pp. 142-145, 148-149.) Does section 1026.2 provide petitioner with "a reasonable opportunity" for what *Franklin holds* is constitutionally mandated at the close of the 180 day period: a jury determination as to whether he should be released to society? If what petitioner gets immediately after his 180-day initial commitment is a hearing before some trier of fact other than a jury of his peers then the answer is no. *Franklin* requires a jury trial.

But there is no need to declare the statute unconstitutional. All that is necessary is to read section 1026.2—particularly subdivision (e)—as referring to a jury trial in its reasonably vague language "[i]f the court at the hearing determines . . . ." That language—almost identical to the language of former section 1026 construed by the Supreme Court in *Franklin*—(at p. 149)—does not preclude a jury trial upon a timely demand. Since a jury trial is constitutionally required, the statutory language should be construed to meet that mandate as it was in *Franklin*. Nor does anything in the history of the 1984 amendment indicate any legislative intention to change what *Franklin* requires: a jury trial immediately following a prehearing commitment period on the question of suitability for release.[2]

---

[2]The staff analysis of the Senate Committee on the Judiciary reveals that the 1984 changes in the commitment procedure were drafted with the lessons of *Franklin* in mind. For example, in commenting on the proposed increase of the initial commitment period from 90 days to 180 days, the analysis states: "(a) *Constitutionality* [¶] The present 90 day hospitalization requirement has been upheld against due process and equal protection as being 'reasonably necessary to provide a minimum opportunity for institutional observation and examination regarding the patient's present sanity.' [*In re Franklin* (1977) 7 Cal.3d 126.] Extending the minimum confinement period to 180 days could invite the same attacks. However, the new requirement appears supportable for the same reasons. . . ." (At p. 6.)

The Legislature was well aware of the *Franklin* decision as revealed in the above statement and in the explanation, in the same analysis, that the new statute would codify the *Franklin* test for restoration of sanity.* Yet with *Franklin* specifically brought to its attention, the Legislature did not write into section 1026.2 any provision that an applicant for release had no right to a jury trial to determine the question of initial release to a local mental health program.

*The analysis for the Senate Committee on the Judiciary explains: "In *In re Franklin*, (1972) 7 Cal.3d 126, the court held that the relevant standard for determining whether a person has been restored to sanity is whether 'he has improved to the extent that he is no longer a danger to the health and safety of others, including himself.' Recently, in *People v. Woodson*, (1983) 140 Cal.App.3d 1, the First District Court of Appeal reasoned that the *Franklin* test applied only to violent offenders, and held that the test for nonviolent offenders

Ignoring that part of the *Franklin* holding which requires an immediate jury trial following the initial commitment period, the majority is content with the *possibility* that petitioner may someday qualify for a jury trial.

The majority opinion concedes the "ultimate decision whether the applicant has actually been restored to sanity must be made by a jury" (majority opn., *ante*, p. 975) and candidly admits that this ultimate fact finder may never be reached. (*Id.*, at p. 976.) But that is not improper, we are told, because there are "procedural safeguards": each time petitioner is turned down by the superior court judge he merely has to wait a year before asking again. And he may do so "for an unlimited time." (*Id.*, at p. 975.) This procedural safeguard amounts to reminding petitioner that when he is denied his constitutional right he may ask again and again and again. Not unlike the Gulag.

The additional procedural safeguard relied upon by the majority is that the judge's factual determination is subject to review by habeas corpus. (Majority opn., *ante*, p. 976.) So far as I am aware this is the first time in the history of California constitutional jurisprudence that judicial review of a judge's factual findings has been equated with a right to trial by jury.

The real predicate of the majority's decision is that the only thing being denied petitioner is a jury determination regarding what the majority euphemistically describe as a "placement" decision. (Majority opn., *ante*, p. 974.) This is also the tack taken by the Attorney General, although the nomenclature used by him is a little different: release to a local mental health program is a mere "treatment choice." The argument is that one is not entitled to a jury trial on treatment choices or placement decisions.

Viewed in those terms the argument is difficult to counter. Of course petitioner is not entitled to a jury determination on whether an aspirin or an enema is the proper treatment nor should a jury be empaneled to determine whether he should be housed in one wing of a hospital or another. But, those are not the decisions the trier of fact is asked to make under section 1026.2. Rather what must be determined is whether "the applicant will . . . be a danger to the health and safety of others, including himself or herself, if under supervision and treatment in the community, . . ." (§ 1026.2, subd. (e).) If the answer is in the negative then placement in the local mental health program follows automatically. (*Ibid.*) If the answer is in the affirmative the person stays where he is: in custody. (*Ibid.*) But in either event

---

is 'whether there is a reasonable likelihood that the hospitalized person will recommit the offense that led to his hospitalization.' [¶] This bill would codify the *Franklin* rule as the test for restoration of sanity, and would overturn *Woodson*." (At pp. 10-11.)

the ultimate question is freedom or the continued total and unconditional denial of freedom, a far cry from choosing between aspirins or enemas.

More critical to our inquiry, however, is that the determination made by the trier of fact at this initial hearing is itself the condition precedent to the right that even the majority opinion recognizes to be of a constitutional dimension: the jury trial at the end of the 12-month period in the local mental health program.

Under the 1984 amendments petitioner has no chance of being restored to society until he has successfully completed one year of treatment in a local mental health program. Getting into that program becomes the sine qua non to freedom—the key to the door. Such questions are thus not merely questions of "treatment" or "placement" although they certainly partake of both. They are questions that condition freedom. As I understand the clear, unmistakable and repeated holding and rationale of *Franklin,* once the initial treatment and evaluation period has ended—as it has here— petitioner has an unconditional immediate right to have a jury determine such questions.

For these reasons I would construe section 1026.2, subdivision (e) to conform with the holding of *In re Franklin.* Therefore I would issue a peremptory writ of mandate directing respondent court to grant petitioner's request for a jury trial to determine whether petitioner would pose a danger to the health and safety of others, including himself, if under supervision and treatment in the community.

Petitioner's application for review by the Supreme Court was denied January 22, 1987.