[No. A048581. First Dist., Div. Five. Apr. 11, 1990.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
LEONARD WOODS, Real Party in Interest.

## Counsel

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Jeremy Friedlander, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Charles H. James, Public Defender, and David C. Coleman III, Deputy Public Defender, for Real Party in Interest.

## Opinion

**HANING, J.**—Real party in interest Leonard Woods, who has been found not guilty by reason of insanity and committed to a state mental hospital,

seeks his release from his hospital commitment on the ground that his sanity has been restored. (Pen. Code, § 1026.2.)[1] Section 1026.2, subdivision (e) provides that no person shall be released for restoration of sanity until after he or she spends a year in a local outpatient program. Real party has not undergone outpatient treatment as part of his commitment, but respondent superior court proposes to conduct a section 1026.2 hearing on the issue of real party's outright release. The People seek a writ of mandate to compel the court to proceed on the issue of outpatient suitability only. We will issue the requested writ.

Real party pled not guilty by reason of insanity (NGI) to a charge of train derailing (§ 219) in 1980. He was duly committed to the California State Hospital system for life. In October 1989, he petitioned the superior court, by letter, for release on the ground of restoration of sanity. (§ 1026.2.) In response to a court request the medical director of Napa State Hospital, where real party is currently confined, filed a letter with the court supporting the petition for release on the ground that real party is no longer a danger to the community. It is apparent from this letter, and real party essentially concedes, that real party has never been in an outpatient program.

The superior court set the sanity petition for jury trial. Apparently on the belief that this action indicated the trial court was planning to conduct a hearing on the issue of outright release rather than suitability for outpatient treatment, the People moved to vacate the jury trial and took the position that section 1026.2, subdivision (e) required a year in an outpatient program as a precursor to release. The trial court denied the motion by minute order, and the next day filed a "Clarification Order," which recites: "THE MINUTE ORDER . . . IS HEREBY CLARIFIED TO READ: Motion to Vacate jury trial on restoration of sanity is denied. The jury trial is confirmed . . . *on the issue of restoration of sanity for full release.* The jury trial is *specifically not on the issue of readiness for outpatient release.*" (Italics added.) This petition followed.

When an application is made for release on restoration of sanity under section 1026.2, the trial court is required to set the matter for hearing. (§ 1026.2, subd. (a).) Subdivision (e) of the statute describes the nature of the hearing process: "The court shall hold a hearing to determine if the person applying for restoration of sanity would no longer be a danger to the health and safety of others, including himself or herself, if under supervision and treatment in the community." If the court finds no such danger, the defendant may be placed in an outpatient program for one year. "All or a

---

[1] All further statutory references are to the Penal Code.

substantial portion of the program shall include outpatient supervision and treatment." The statute explicitly states that "[t]he court shall not determine whether the applicant has been restored to sanity until the applicant has completed the one year in the appropriate local mental health program."

■ "Subdivision (e) of section 1026.2 sets up a two-step process for processing an application for release: first, a determination of whether the applicant should be placed in a local program, and later, after a year in such a program, a determination of whether the applicant's sanity has been restored. [Citation.]" (*Barnes* v. *Superior Court* (1986) 186 Cal.App.3d 969, 973 [231 Cal.Rptr. 158].)

Since real party has never been an outpatient, respondent superior court is specifically barred by statute from proceeding directly to the issue of outright release. The statute contains no exception to the two-step process for situations wherein the treating hospital recommends such release. Regardless of real party's current prognosis, the statute requires the crucible of a one-year "testing period" as an outpatient, an obvious transitional term in a noninstitutional setting.

In his opposition to the petition, real party contends the outpatient requirement is irrelevant because it was not part of the law in effect at the time he entered his NGI plea. In 1980, then section 1026.2 required only a 90-day period of confinement as a precursor to consideration for release. The current version of section 1026.2 was not effective until several years later. Real party contends the outpatient requirement is an impermissible ex post facto provision.

This contention, presented in little over two pages of argument, does not appear to have been raised below. The Attorney General states it was not and only addresses it in his reply brief to the opposition. There is nothing in the record, such as a motion from the defense, to indicate an ex post facto challenge was made. In any case the argument is without merit. Retroactive changes in the law which result in increased terms of commitment for NGI defendants are not considered ex post facto because the commitments are not penal but for treatment purposes. (*People* v. *Juarez* (1986) 184 Cal.App.3d 570, 575 [229 Cal.Rptr. 145]; *People* v. *Buttes* (1982) 134 Cal.App.3d 116, 129 [184 Cal.Rptr. 497]; *People* v. *Superior Court* (*John D.*) (1979) 95 Cal.App.3d 380, 393-394 [157 Cal.Rptr. 157].)

The People are entitled to a writ directing the superior court to conduct a hearing limited to the issue of outpatient suitability. We have reached this conclusion after full briefing by the parties and after having given notice we

might act by issuing a peremptory writ in the first instance. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].)

Accordingly, let a peremptory writ of mandate issue commanding respondent Superior Court of Contra Costa County to vacate its orders of January 31, 1990, and February 1, 1990, which direct that the pending sanity restoration hearing shall determine suitability for outright release, and to enter a new and different order limiting the hearing to suitability for outpatient treatment pursuant to section 1026.2. The stay of proceedings heretofore imposed is dissolved. ■ ■ ■ ■ To facilitate the relief requested, this opinion is final forthwith. (Cal. Rules of Court, rule 24(d).)[2]

Low, P. J., and King, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied May 31, 1990.

---

[2] For the benefit of the court and parties we note the sanity hearing shall be conducted without a jury. *Barnes* held an NGI defendant is only entitled to a jury on the outright release issue, and the issue of outpatient suitability is to be tried to the court. The Fourth District has disagreed with *Barnes* (*People* v. *Tilbury* (1989) 214 Cal.App.3d 1063 [263 Cal.Rptr. 173]), but on January 25, 1990, the California Supreme Court granted review in *Tilbury* (S012984 ) and did not leave it published pending review. We concur with *Barnes*.