[No. A072662. First Dist., Div. One. Aug. 2, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH BECK, Defendant and Appellant.

**COUNSEL**

Joseph A. Ragazzo, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Seth K. Schalit, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SWAGER, J.**—Joseph Beck, who was earlier acquitted of criminal charges by reason of insanity, now appeals an order conditionally releasing him from a state mental hospital, contending that he was entitled to immediate and unconditional release. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 30, 1992, appellant pleaded not guilty by reason of insanity to a charge of kidnapping with an enhancement for infliction of great bodily

injury. Counsel stipulated to submit the issue of sanity to the court on the written reports of two psychiatrists. The psychiatric reports reveal that appellant, aged 29, lived in South Carolina and worked for his father in the trucking business. A former marine, he was married and had three children. On long trucking hauls, he was accustomed to consuming extremely large quantities of caffeine to stay alert. On July 27, 1992, he and his father were in Solano County on a cross-country haul. While waiting for a warehouse to open, appellant experienced delusions of rattlesnakes in the truck. For obscure reasons, he began to struggle with his father, inflicted serious knife wounds and then drove around aimlessly before being apprehended. Finding that appellant was in fact insane at the time of the commission of the offense, the court committed him to Atascadero State Hospital for a maximum term of 12 years.

Almost three years later, appellant petitioned for transfer to outpatient status under Penal Code section 1026.2, subdivision (e), and applied for a trial for restoration of sanity. The administration of Atascadero State Hospital supported his petition in a written report submitted to the court. At a hearing on June 14, 1995, Dr. Constance Devantzis, a psychiatrist who had treated appellant for about two years, testified that he suffered from a caffeine-related disorder, which was now resolved, and from a psychotypical personality disorder. He stated in the most unequivocal terms that appellant was not mentally ill. The personality disorder was a life-long pattern, present in about 3 percent of the population, which was not treatable. Dr. Devantzis also testified that appellant "was compliant with hospital rules and policies and never was threatening or violent." In his opinion, appellant was "not dangerous to himself or others" and should be released from the state mental health system and allowed to return home. A psychiatric social worker who had also treated appellant, similarly testified that he was not mentally ill or prone to violence and would benefit from immediate return to his home.

On the strength of the undisputed evidence that he was neither mentally ill nor violent, appellant argued that he was constitutionally entitled to immediate release under *Foucha* v. *Louisiana* (1992) 504 U.S. 71 [118 L.Ed.2d 437, 112 S.Ct. 1780] (hereafter *Foucha*). The court, however, distinguished the *Foucha* decision and elected to follow the statutory procedures of Penal Code section 1026.2, subdivision (e). Finding that he was "not a danger to the health and safety of others due to any mental defect, disease or disorder while under supervision or treatment in the community," the court placed him in an outpatient program for a period of one year. In this appeal,

appellant maintains that the order violated his constitutional right to due process and equal protection.[1]

DISCUSSION

Before addressing the constitutional issues, we review briefly the statutory scheme. A person committed to a state hospital after a verdict of not guilty by reason of insanity may apply for conditional release after a period of 180 days from the date of the order of commitment. (Pen. Code, § 1026, subd. (a), and § 1026.2, subd. (d).) Subdivision (e) of Penal Code section 1026.2 establishes a two-step procedure for processing such an application. First, the court holds a hearing to determine whether the applicant "would be a danger to the health and safety of others, due to mental defect, disease or disorder, if under supervision and treatment in the community." If the court finds no impediment, it shall order the person to be placed in a local outpatient program for a period of one year. At the end of the year, the court shall conduct a trial "to determine if sanity has been restored, which means the applicant is no longer a danger to the health and safety of others, due to mental defect, disease, or disorder." The court may not set the trial before the person has completed a year of outpatient treatment unless the program director recommends an earlier release. (*People* v. *Superior Court* (*Woods*) (1990) 219 Cal.App.3d 614 [268 Cal.Rptr. 379].)

 The requirement that the insanity acquittee remain a year in an outpatient program before being restored to sanity was added by a 1984 statutory amendment which was intended "to make the requirements for release 'stricter' and to 'prevent premature release.' [Citation.]" (*People* v. *Tilbury* (1991) 54 Cal.3d 56, 62-63 [284 Cal.Rptr.2d 288, 813 P.2d 1318]; Stats. 1984, ch. 1488, § 3.5, pp. 5201-5204.) Previously, a person could be released directly from the state mental hospital with no supervision upon an adjudication that his sanity was restored. The one-year period as an outpatient was intended to expose the insanity acquittee to intensive and prolonged evaluation in a noninstitutional setting before an unconditional release. (See Sen. Republican Caucus, Rep. on Sen. Bill No. 1984 (1983-1984 Reg. Sess.).)

In 1993, the statute was amended to conform to *Foucha, supra,* 504 U.S. 71 [118 L.Ed.2d 437] by adding the language "due to mental defect, disease

---

[1]We issue this opinion even though appellant was released from the outpatient program on June 6, 1996. Two principles justify departure from ordinary considerations of mootness. First, as stated in *People* v. *Feagley* (1975) 14 Cal.3d 338, 345 [121 Cal.Rptr. 509, 535 P.2d 373], "the finding and order . . . are far from unique, and 'we cannot be oblivious to the importance of the constitutional issue posed nor the number of persons who are affected.' [Citation.]" Second, because of the short term of the outpatient placement under Penal Code section 1026.2, subdivision (e), the case presents a matter subject to repetition, yet evading review. (*People* v. *Gibson* (1988) 204 Cal.App.3d 1425, 1429 [252 Cal.Rptr. 56].)

or disorder." (Stats. 1993, ch. 1141, § 2.) The defendant in *Foucha* was found not guilty by reason of insanity and committed to a state hospital where he could be confined indefinitely under Louisiana law unless he could prove that he was no longer dangerous. In a later proceeding for his release, the court ordered an evaluation by two psychiatrists who found that he was "in remission from mental illness" but declined to certify that "he would not constitute a menace to himself or others if released." (*Foucha, supra,* at pp. 74-75 [118 L.Ed.2d at p. 444].) In their opinion, the defendant had "an antisocial personality" (*id.* at p. 75 [118 L.Ed.2d at p. 445]) that rendered him potentially dangerous even though it did not qualify as a mental disorder. Finding that he had not carried the burden of proving that he was not dangerous, the trial court ordered the defendant to be returned to the mental institution. (*Ibid.*) In a five-to-four decision, the Supreme Court reversed on the ground that an acquittee can be confined in a mental institution only so long as he is "*both* mentally ill and dangerous." (*Id.* at p. 77 [118 L.Ed.2d at p. 446], italics added.) A plurality held that Louisiana law violated the constitutional guarantees of both due process and equal protection by permitting "the indefinite detention of insanity acquittees who are not mentally ill but who do not prove they would not be dangerous to others." (*Id.* at p. 83 [118 L.Ed.2d at p. 450].) A concurring opinion by Justice O'Connor was based only on considerations of due process.

On its facts, *Foucha* does not directly govern the present case. The defendant there was potentially subject to indefinite detention in a mental hospital; the issue here is the constitutionality of a mandatory one-year program of outpatient treatment before restoration of sanity and unconditional release. The *Foucha* court in fact distinguished a pretrial detention decision, *United States* v. *Salerno* (1987) 481 U.S. 739 [95 L.Ed.2d 697, 107 S.Ct. 2095], on the ground that "the detention we found constitutionally permissible was strictly limited in duration." (*Foucha, supra,* 504 U.S. at p. 82 [118 L.Ed.2d at p. 450].) Nevertheless, appellant argues that, despite its limited duration, the mandatory period of outpatient treatment does not meet the constitutional standards enunciated in the decision.

## A. *Due Process*

The *Foucha* court held that the Louisiana procedure violated the defendant's right to due process on two closely related grounds relevant to the present case.[2] First it held that "[d]ue process requires that the nature of commitment bear some reasonable relation to the purpose for which the

---

[2]The decision relied on a third rationale, based on procedural due process, which appellant also argues in this appeal. However, we see no substantial procedural due process issue. The

individual is committed." (*Foucha, supra*, 504 U.S. at p. 79 [118 L.Ed.2d at p. 447].) Thus, a convicted felon cannot be confined to a mental institution unless he is found to be mentally ill. Secondly, substantive due process bars any restriction of a person's liberty which does not serve some valid state interest, such as the treatment of mental illness, deterrence of crime or, under certain narrow circumstances, protection of others in the community. (*Id.* at pp. 80-81 [118 L.Ed.2d at pp. 448-449].)

Appellant reasons that, since the record establishes that he was not mentally ill or disposed to violence, the restriction of his liberty for one year in a treatment program for the mentally ill is prohibited under either of the above analyses. We see, however, a distinct purpose for ordering him to participate in the outpatient program: the public interest in careful evaluation of insanity acquittees before release. There can be no doubt that the evaluation of a criminal defendant's mental illness may sometimes justify a period of detention. Thus, *Jackson v. Indiana* (1972) 406 U.S. 715, 738 [32 L.Ed.2d 435, 450-451, 92 S.Ct. 1845] holds that a person charged with a criminal offense who is committed because of mental incapacity to stand trial can be held for a "reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." The applicable principle, we think, was aptly stated by the *Jackson* court. "[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." (*Ibid.*) The pertinent question here is whether the procedure of Penal Code section 1026.2, subdivision (e), bears a reasonable relation to the statutory purpose of properly evaluating an insanity acquittee before an unconditional release is granted.

The process of determining whether an insanity acquittee is prepared for successful release into the community is unquestionably fraught with uncertainty. As stated in *Jones v. United States, supra*, 463 U.S. 354, 364-365, footnote 13 [77 L.Ed.2d 694, 705], the Supreme Court has "recognized repeatedly the 'uncertainty of diagnosis in this field and the tentativeness of professional judgment. The only certain thing that can be said about the present state of knowledge and therapy regarding mental disease is that science has not reached finality of judgment . . . .' [Citations.] The lesson we have drawn is not that government may not act in the face of this uncertainty, but rather that courts should pay particular deference to reasonable legislative judgments."

original finding of the insanity at the criminal trial constitutes an adequate basis for institutional confinement. (*Jones v. United States* (1983) 463 U.S. 354, 363-364 [77 L.Ed.2d 694, 704-705, 103 S.Ct. 3043].) California courts have held that due process does not require a jury trial for outpatient placement under Penal Code section 1026.2, subdivision (e). (*People v. Tilbury, supra*, 54 Cal.3d at pp. 68-70; *Barnes v. Superior Court* (1986) 186 Cal.App.3d 969 [231 Cal.Rptr. 158].)

In reviewing the procedure at issue here, we bear in mind three considerations tending to support the legislative judgment. First, an acquittal by reason of insanity entails a finding that the defendant in fact committed a criminal offense. The commission of the crime in turn supports an inference of potential dangerousness and possible continuing mental illness (see *Jones* v. *United States*, *supra*, 463 U.S. at pp. 364-366 [77 L.Ed.2d at pp. 705-707]), which justifies the state in exercising great care in evaluating the offender prior to release into the community. Second, the process of evaluating the defendant for a prolonged period in a noninstitutional setting has obvious merit. It provides a "trial run" for the defendant's release, conducted under conditions resembling what the defendant will later find in the community. (See *People* v. *Superior Court* (*Woods*), *supra*, 219 Cal.App.3d at p. 617.) Third, the fact that participation in an outpatient program involves a lesser interference with personal liberty than institutional commitment makes it easier to justify a longer period of restriction. (Cf. *Vitek* v. *Jones* (1980) 445 U.S. 480, 491-492 [63 L.Ed.2d 552, 563-564, 100 S.Ct. 1254]; *People* v. *DeGuzman* (1995) 33 Cal.App.4th 414, 419-420 [39 Cal.Rptr.2d 137].) In this respect, we note that the local program director may recommend an outpatient for release at any time during the year, thereby giving him a right to apply immediately for restoration of sanity. While this discretionary authority does not cure due process objections, we see it as mollifying the conditions of restraint entailed in the one-year program of outpatient treatment.

In *People* v. *Tilbury*, *supra*, 54 Cal.3d at page 70, our high court quotes dictum in *Marshall* v. *United States* (1974) 414 U.S. 417, 427 [38 L.Ed.2d 618, 626, 94 S.Ct. 700], which states, "When [a legislative body] undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation . . . ." Similarly, in her concurring opinion in *Foucha*, Justice O'Connor emphasized that the court addressed only the specific statutory scheme before it without passing "judgment on more narrowly drawn laws that provide for detention of insanity acquittees." (*Foucha*, *supra*, 504 U.S. at p. 87 [118 L.Ed.2d at p. 452] (conc. opn. of O'Connor, J.).) The opinion, in her view, "leaves the States appropriate latitude to care for insanity acquittees in a way consistent with public welfare." (*Id.* at p. 90 [118 L.Ed.2d at pp. 454-455].) We regard Penal Code section 1026.2 as falling within the description of such a "more narrowly drawn" law.

California courts have twice passed on an analogous statutory provision. In *In re Franklin* (1972) 7 Cal.3d 126 [101 Cal.Rptr. 553, 496 P.2d 465], the court upheld the constitutionality of a former statute requiring an insanity acquittee to be committed in a state hospital for 90 days before applying for

release. The court found that the requirement served a valid state interest: ". . . the purpose underlying the 90-day interval between initial commitment and a hearing on the question of present sanity is to 'permit a sufficient length of time to elapse to enable those who may be called upon to pass upon the sanity of the patient to intelligently give their judgment as to whether or not he has recovered his reason.' [Citation.]" (*Id.* at p. 143.) The court considered that the 90-day period was within the permissible range of choices for the Legislature to select. It noted that an earlier decision, *In re Slayback* (1930) 209 Cal. 480 [288 P. 769] had upheld a one-year prehearing period. (*In re Franklin, supra,* at p. 143.)

Though decided 66 years ago, the opinion in *In re Slayback, supra,* 209 Cal. 480, is remarkably relevant today. After noting the Legislature had required a person acquitted by reason of insanity to be confined in a mental hospital for one year before the court could entertain an application for his discharge, the court asked, "Is such an enactment unreasonable or beyond the power of the legislature to enact? We think not. . . . The restraint and detention imposed is not, as we have seen, for the purpose of inflicting punishment upon a defendant but to permit a sufficient length of time to elapse to enable those who may be called upon to pass upon the sanity of the patient to intelligently give their judgment as to whether or not he has recovered his reason. The legislature has fixed this time as one year. Perhaps a lesser or greater time would serve the same purpose, but the legislature was in as good a position to judge of the time required as are the courts. . . . [A]nd as the matter is one primarily for the legislature we see no reason to overturn their action." (*Id.* at p. 491.)

Appellant points out that the current statutory scheme permits an acquittee to be subject to 18 months of restriction for purpose of mental evaluation. He must remain 180 days in the state hospital or other treatment facility before applying for conditional release of 1 year in an outpatient program. The period of restriction extends well beyond that approved by the Supreme Court in *In re Franklin, supra,* 7 Cal.3d 126, though it is perhaps comparable to the one-year period of hospitalization sanctioned in *In re Slayback, supra,* 209 Cal. 480. Is such a statutory scheme beyond the power of the Legislature to enact? The question presents a matter of degree. At some point, a lengthy period of restriction would exceed the needs of reasonable evaluation. That point has not been reached in the case at bar. In light of the strong public interest in avoiding premature release of mentally disordered acquittees and the uncertainties in psychiatric evaluation, we find that "the nature and duration of commitment bear some reasonable relation to the purpose for which [appellant was] committed." (*Jackson v. Indiana, supra,* 406 U.S. at p. 738 [33 L.Ed.2d at p. 451].)

## B. *Equal Protection*

■ Alternatively, appellant claims that Penal Code section 1026.2 violates the constitutional guarantee of equal protection because a procedure similar to the one-year program of outpatient treatment is not required by statutes governing civil commitment and the parole of mentally disordered offenders. ■ The guarantee of equal protection of the laws, found in article I, section 7, subdivision (a) of the California Constitution and the Fourteenth Amendment of the United States Constitution, requires "that, at a minimum, 'persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' [Citations.] [¶] . . . Thus, when a statute provides that one class shall receive different treatment from another, our constitutional provisions demand more 'than nondiscriminatory application within the class . . . establish[ed] . . . . [They] also [impose] a requirement of some rationality in the nature of the class singled out.' [Citations.]" (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]; *Cleburne* v. *Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 440 [87 L.Ed.2d 313, 320-321, 105 S.Ct. 3249].)

■ Under the California Constitution, we must proceed according to the strict scrutiny standard of equal protection analysis in reviewing the commitment of mentally ill offenders. (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 171, fn. 8 [167 Cal.Rptr. 854, 616 P.2d 836].) "Accordingly, the state must establish both that it has a 'compelling interest' which justifies the challenged procedure and that the distinctions drawn by the procedure are necessary to further that interest." (*In re Moye* (1978) 22 Cal.3d 457, 465 [149 Cal.Rptr. 491, 584 P.2d 1097].) The United States Supreme Court, however, has applied the traditional rational basis test in review of similar issues. (*Baxstrom* v. *Herold* (1966) 383 U.S. 107, 110-111 [15 L.Ed.2d 620, 623-624, 86 S.Ct. 760].)

■ We see no difficulty in differentiating the circumstances of insanity acquittees and civilly committed persons. (See *People* v. *Tilbury, supra,* 54 Cal.3d at pp. 63-68.) Insanity acquittees "themselves have raised the issue of their legal insanity as a defense in criminal proceedings" (*People* v. *Wilder* (1995) 33 Cal.App.4th 90, 104 [39 Cal.Rptr.2d 247]) so that there is "diminished concern as to the risk of error." (*Jones* v. *United States, supra,* 463 U.S. 354, 367 [77 L.Ed.2d 694, 707].) Moreover, insanity acquittees [have] "demonstrated dangerousness by committing a criminal offense. . . . [T]here has been an adjudication that [they] committed a criminal act and [were] legally insane when [they] did so." (*People* v. *Wilder, supra,* at p. 105.)

There is perhaps a closer parallel between the situation of an insanity acquittee and a mentally disordered offender placed in a treatment facility as

a condition of parole pursuant to Penal Code section 2960 et seq. (See *People* v. *Gibson* (1988) 204 Cal.App.3d 1425, 1437 [252 Cal.Rptr. 56].) But we see a compelling interest in avoiding the premature release of insanity acquittees which is not present for the release of mentally disordered offenders. The adjudication of not guilty by reason of insanity makes an offender eligible for relatively early release without diminishing concern for the safety of the community. In contrast, a mentally disordered offender has served a sentence after being convicted of the crime; the time served in prison in itself provides a consideration favoring his release, by raising the possibility of personal change during the period of confinement and satisfying the statutory goal of punishment. (Pen. Code, § 1170, subd. (a).)

In general, the courts have recognized that ". . . persons acquitted by reason of insanity fall within a special class, thereby providing a rational basis for differences in the treatment afforded them. [Citations.]" (*In re Franklin*, *supra*, 7 Cal.3d at p. 146.) After surveying state statutes, the United States Supreme Court referred to "the widely and reasonably held view that insanity acquittees constitute a special class that should be treated differently from other candidates for commitment." (*Jones* v. *United States*, *supra*, 463 U.S. 354, 370 [77 L.Ed.2d 694, 709].) We conclude that the Legislature could reasonably find that compelling interest in avoiding the premature release of an insanity acquittee justifies the requirement of a one-year program of outpatient treatment, which is an interest not found in the case of the release of persons civilly committed or the parole of mentally disordered offenders.

### DISPOSITION

The judgment is affirmed.

Strankman, P. J., and Dossee, J., concurred.

A petition for a rehearing was denied September 3, 1996, and appellant's petition for review by the Supreme Court was denied November 13, 1996. Mosk, J., was of the opinion that the petition should be granted.