[No. B157187. Second Dist., Div. Five. Mar. 11, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
DANTE MICHAEL SOIU, Defendant and Appellant.

**COUNSEL**

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, Dante Michael Soiu, appeals from the denial of his petition for placement in a conditional release program pursuant to Penal Code section 1026.2.[1] Defendant argues the trial court committed error by denying his petition for placement in a conditional release program without holding an evidentiary hearing. We agree.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## II.  PROCEDURAL BACKGROUND

On December 14, 2000, defendant was convicted of stalking. (§ 646.9, subd. (a).) The trial court also found that at the time of the commission of the offense, defendant was insane within the meaning of section 1026 and that he had not fully recovered his sanity. On the same date, defendant was ordered committed to the State Department of Mental Health for placement in a state hospital until such time as his sanity was restored. Defendant's period of confinement was not to exceed three years. Defendant was given presentence credit for 215 days.

Defendant filed a petition for placement in a conditional release program pursuant to section 1026.2 on October 9, 2001. At the time, he was committed to Patton State Hospital. In determining that it would take no action on the petition, the trial court relied on the recommendation of May 24, 2001, from Patton State Hospital. That recommendation was that defendant remain in the state hospital and continue treatment. Thereafter, on November 16, 2001, a report was submitted to the trial court pursuant to section 1026, subdivision (f), by the director at Metropolitan State Hospital, where defendant had been transferred. The report recommended continued hospitalization and treatment for defendant. On January 30, 2002, defendant filed a supplemental petition for hearing and release to a conditional release program pursuant to section 1026.2. In that supplemental petition, defendant requested the appointment of an independent psychologist to assist him in establishing his eligibility for the conditional release program and asserted that a hearing must be held in the trial court. On January 30, 2002, the trial court denied the petition, noting: "Previously, the court received and concurred in the report from defendant's treatment team at Metropolitan State Hospital recommending that the defendant be retained at the hospital for continued treatment. The court has set a progress report for June 13, 2002. The court concur[s] with defendant's treatment team that the defendant should not be released to a less restrictive setting and that it is most beneficial that the defendant remain in the hospital. The defendant's request for an independent psychologist to be appointed is denied." On January 30, 2002, the trial court ordered the director of Metropolitan State Hospital to provide a report on defendant's progress for a nonappearance calendar on June 13, 2002, and every six months thereafter. Defendant filed a "petition for writ of mandate/writ of habeas corpus" to compel the trial court to conduct an evidentiary hearing pursuant to section 1206.2 regarding his petition for placement in a conditional release program. We summarily denied the petition. (*Soiu v. Superior Court* (May 3, 2002, B156685) [nonpub. order].) No review petition was filed.

## III. Discussion

### A. *Right to a Hearing*

Over the years, there have been changes in the procedures to be followed by trial courts in responding to issues raised by defendants who have been found not guilty by reason of insanity. (See *Hartman v. Summers* (C.D.Cal. 1995) 878 F.Supp. 1335, 1340, fn. 7; *People v. Tilbury* (1991) 54 Cal.3d 56, 60-68 [284 Cal.Rptr. 288, 813 P.2d 1318]; *People v. Sword* (1994) 29 Cal.App.4th 614, 621, fn. 4 [34 Cal.Rptr.2d 810].) As a result, the duties of courts when confronted by custody change requests by defendants who have been found not guilty by reason of insanity and committed to the state hospital can be confusing. As matters presently stand, the following is the process to be followed when an accused has been found not guilty by reason of insanity, committed to a state hospital, and pursuant to section 1026.2 seeks her or his release.

Section 1026.1 identifies three distinct circumstances where a defendant who has been found not guilty by reason of insanity and committed to the state hospital may be released. First, a defendant committed to a state hospital may be released pursuant to the provisions of section 1026.2. Second, unless the period of confinement is extended pursuant to section 1026.5, subdivision (b),[2] upon the expiration of the maximum time of commitment, the defendant must be released. Third, an accused found not

---

[2]Section 1026.5, subdivision (b) states: "(b)(1) A person may be committed beyond the term prescribed by subdivision (a) only under the procedure set forth in this subdivision and only if the person has been committed under Section 1026 for·a felony and by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others. [¶] (2) Not later than 180 days prior to the termination of the maximum term of commitment prescribed in subdivision (a), the medical director of a state hospital in which the person is being treated, or the medical director of the person's treatment facility or the local program director, if the person is being treated outside a state hospital setting, shall submit to the prosecuting attorney his or her opinion as to whether or not the patient is a person described in paragraph (1). If requested by the prosecuting attorney, the opinion shall be accompanied by supporting evaluations and relevant hospital records. The prosecuting attorney may then file a petition for extended commitment in the superior court which issued the original commitment. The petition shall be filed no later than 90 days before the expiration of the original commitment unless good cause is shown. The petition shall state the reasons for the extended commitment, with accompanying affidavits specifying the factual basis for believing that the person meets each of the requirements set forth in paragraph (1). [¶] (3) When the petition is filed, the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial. The rules of discovery in criminal cases shall apply. If the person is being treated in a state hospital when the petition is filed, the court shall notify the community program director of the petition and the hearing date. [¶] (4) The court shall conduct a hearing on the petition for extended commitment. The trial shall be by jury unless waived by both the person and the prosecuting attorney. The trial shall commence no later than 30 calendar days prior to the time the person would otherwise have

guilty by reason of insanity can be released as provided by section 1600 et seq. (§ 1026.1.)[3] In this case, the only issue relates to the first option

been released, unless that time is waived by the person or unless good cause is shown. [¶] (5) Pending the hearing, the medical director or person in charge of the facility in which the person is confined shall prepare a summary of the person's programs of treatment and shall forward the summary to the community program director or a designee, and to the court. The community program director or a designee shall review the summary and shall designate a facility within a reasonable distance from the court in which the person may be detained pending the hearing on the petition for extended commitment. The facility so designated shall continue the program of treatment, shall provide adequate security, and shall, to the greatest extent possible, minimize interference with the person's program of treatment. [¶] (6) A designated facility need not be approved for 72-hour treatment and evaluation pursuant to the provisions of the Lanterman-Petris-Short Act (Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code). However, a county jail may not be designated unless the services specified in paragraph (5) are provided and accommodations are provided which ensure both the safety of the person and the safety of the general population of the jail. If there is evidence that the treatment program is not being complied with or accommodations have not been provided which ensure both the safety of the committed person and the safety of the general population of the jail, the court shall order the person transferred to an appropriate facility or make any other appropriate order, including continuance of the proceedings. [¶] (7) The person shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees. The state shall be represented by the district attorney who shall notify the Attorney General in writing that a case has been referred under this section. If the person is indigent, the county public defender or State Public Defender shall be appointed. The State Public Defender may provide for representation of the person in any manner authorized by Section 15402 of the Government Code. Appointment of necessary psychologists or psychiatrists shall be made in accordance with this article and Penal Code and Evidence Code provisions applicable to criminal defendants who have entered pleas of not guilty by reason of insanity. [¶] (8) If the court or jury finds that the patient is a person described in paragraph (1), the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed. This commitment shall be for an additional period of two years from the date of termination of the previous commitment, and the person may not be kept in actual custody longer than two years unless another extension of commitment is obtained in accordance with the provisions of this subdivision. Time spent on outpatient status, except when placed in a locked facility at the direction of the outpatient supervisor, shall not count as actual custody and shall not be credited toward the person's maximum term of commitment or toward the person's term of extended commitment. [¶] (9) A person committed under this subdivision shall be eligible for release to outpatient status pursuant to the provisions of Title 15 (commencing with Section 1600) of Part 2. [¶] (10) Prior to termination of a commitment under this subdivision, a petition for recommitment may be filed to determine whether the patient remains a person described in paragraph (1). The recommitment proceeding shall be conducted in accordance with the provisions of this subdivision. [¶] (11) Any commitment under this subdivision places an affirmative obligation on the treatment facility to provide treatment for the underlying causes of the person's mental disorder."

[3]Section 1026.1 provides: "A person committed to a state hospital or other treatment facility under the provisions of Section 1026 shall be released from the state hospital or other treatment facility only under one or more of the following circumstances: [¶] (a) Pursuant to the provisions of Section 1026.2. [¶] (b) Upon expiration of the maximum term of commitment as provided in subdivision (a) of Section 1026.5, except as such term may be extended

identified in section 1026.1, subdivision (a), whether defendant should be released pursuant to the provisions of section 1026.2.

Section 1026.2 involves what has been described as a two-step process. (*People v. Beck* (1996) 47 Cal.App.4th 1676, 1681 [55 Cal.Rptr.2d 340]; *People v. Sword, supra,* 29 Cal.App.4th at p. 620, citing *Barnes v. Superior Court* (1986) 186 Cal.App.3d 969, 973 [231 Cal.Rptr. 158].) The first step in the release process requires the defendant, who has filed a release application, to demonstrate at a *hearing* that he or she will not "be a danger to the health and safety of others, due to mental defect, disease, or disorder, while under supervision and treatment in the community." (§ 1026.2, subdivision (e).) If the court finds such at the hearing, the defendant is then placed in "an appropriate forensic conditional release program for one year." (§ 1026.2, subdivision (e).) This is commonly called the outpatient placement hearing. Thus concludes the first step of the release process.

The second step in the release process, often referred to as the restoration of sanity trial, normally occurs one year after the defendant has been placed in an outpatient program. Typically after one year, the court holds a *trial* to determine whether the defendant's sanity has been restored. Section 1026.2, subdivision (e), defines restoration of sanity as follows, "[T]he applicant is no longer a danger to the health and safety of others, due to mental defect, disease, or disorder." Unlike during the first step in the proceedings, the restoration of sanity trial requires the defendant to demonstrate that he or she is no longer a danger to the health and safety of others under all circumstances. During the first step of the release process, all the defendant must demonstrate is that she or he will not be a danger while "under supervision and treatment in the community." (§ 1026.2, subd. (e); see *People v. Beck, supra,* 47 Cal.App.4th at p. 1684; *People v. Superior Court (Woods)* (1990) 219 Cal.App.3d 614, 617 [268 Cal.Rptr. 379].) The statutory one-year wait for the restoration of sanity trial can be shortened if the community program director makes a recommendation to that effect and proposes release under specified circumstances.[4]

---

under the provisions of subdivision (b) of Section 1026.5. [¶] (c) As otherwise expressly provided in Title 15 (commencing with Section 1600) of Part 2."

[4]Section 1026.2, subdivision (e) states in its entirety: "The court shall hold a hearing to determine whether the person applying for restoration of sanity would be a danger to the health and safety of others, due to mental defect, disease, or disorder, if under supervision and treatment in the community. If the court at the hearing determines the applicant will not be a danger to the health and safety of others, due to mental defect, disease, or disorder, while under supervision and treatment in the community, the court shall order the applicant placed with an appropriate forensic conditional release program for one year. All or a substantial portion of the program shall include outpatient supervision and treatment. The court shall

██ The present case involves only the first step of the release process; the outpatient placement hearing. We agree with defendant that the trial court could not summarily deny his section 1026.2 release request without holding a hearing. This is an issue of statutory interpretation. ██ The controlling statutory construction analysis was articulated by the California Supreme Court as follows: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; see also *People v. Rubalcava* (2000) 23 Cal.4th 322, 328 [96 Cal.Rptr.2d 735, 1 P.3d 52].) ██ The statutory language is solely consistent with defendant's argument he is entitled to a hearing. Section 1026.2, subdivision (e), specifies that a hearing be held on an application for release. Section 1026.2, subdivision (a), requires that a 15-day notice of the hearing be given to various persons.[5] Section 1026.2, subdivision (b) provides that "[p]ending the hearing," the person in charge of the facility in which the accused is confined must prepare a summary of the defendant's treatment programs and forward it to the community program director. Section 1026.2, subdivision (b), requires that the community program director identify a facility "within a reasonable distance from the court in which the person may be detained pending the hearing" on the release application.[6] If the facility designated by the community program director is inappropriate for a variety of reasons, section 1026.2, subdivision (c), permits the court to continue the

retain jurisdiction. The court at the end of the one year, shall have a trial to determine if sanity has been restored, which means the applicant is no longer a danger to the health and safety of others, due to mental defect, disease, or disorder. The court shall not determine whether the applicant has been restored to sanity until the applicant has completed the one year in the appropriate forensic conditional release program, unless the community program director sooner makes a recommendation for restoration of sanity and unconditional release as described in subdivision (h). The court shall notify the persons required to be notified in subdivision (a) of the hearing date."

[5]Section 1026.2, subdivision (a) states in pertinent part, "The court shall give notice of the hearing date to the prosecuting attorney, the community program director or a designee, and the medical director or person in charge of the facility providing treatment to the committed person at least 15 judicial days in advance of the hearing date."

[6]Section 1026.2, subdivision (b) provides: "Pending the hearing, the medical director or person in charge of the facility in which the person is confined shall prepare a summary of the person's programs of treatment and shall forward the summary to the community program director or a designee and to the court. The community program director or a designee shall review the summary and shall designate a facility within a reasonable distance from the court in which the person may be detained pending the hearing on the application for release. The facility so designated shall continue the program of treatment, shall provide adequate security, and shall, to the greatest extent possible, minimize interference with the person's program of treatment."

release proceedings.[7] Further, section 1026.2, subdivision (d), explicitly prohibits holding the hearing on the application until the defendant has been confined or placed on outpatient status for a minimum of 180 days from the commitment order.[8] (See *Hartman v. Summers, supra,* 878 F.Supp. at p. 1340, fn. 6; *People v. Beck, supra,* 47 Cal.App.4th at p. 1681.) Finally, section 1026.2, subdivision (k), states that during the hearing, the defendant has the burden of proof by preponderance of the evidence.[9] Accordingly, based on the express language utilized by the Legislature, we conclude that the trial court could not deny defendant's section 1026.2 release application without holding a hearing at which he would be present.

The statutory language is consistent with legislative committee reports prepared when the hearing requirement was codified. The mandatory hearing requirement was inserted in section 1026.2 in 1984. (Stats. 1984, ch. 1488, § 3, p. 5200.) Legislative committee reports in both houses of the Legislature referred to the requirement that a hearing be held. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1984 (1983-1984 Reg. Sess.) as amended Apr. 5, 1984, p. 13 ["This bill would make the hearing mandatory"]; Assem. Com. on Criminal Law and Public Safety, Rep. on Sen. Bill No. 1984 (1983-1984 Reg. Sess.) as amended Apr. 24, 1984, p. 2 ["Under current law, no hearing is authorized before a court may order transfer of an NGI from or to a state hospital. This bill authorizes the court to hold such a hearing to determine whether to order the transfer"].) Accordingly, the trial court did not have the authority to deny defendant's section 1026.2 release application without holding a hearing at which he is present.

## B. *The Nature of the Hearing*

The sole remaining question is the scope of defendant's procedural rights at the outpatient placement hearing. As noted previously, the Legislature has referred to the outpatient placement proceedings, the first step in the release process, as involving a "hearing." (§ 1026.2, subd. (e) ["The court shall hold a hearing . . . ."].) Later, in section 1026.2, subdivision (e), the Legislature describes the proceedings to occur typically after the passage of one year as

---

[7]Section 1026.2, subdivision (c) provides in pertinent part: "If there is evidence that the treatment program is not being complied with or accommodations have not been provided which ensure both the safety of the committed person and the safety of the general population of the jail, the court shall order the person transferred to an appropriate facility or make any other appropriate order, including continuance of the proceedings."

[8]Section 1026.2, subdivision (d) states in its entirety, "No hearing upon the application shall be allowed until the person committed has been confined or placed on outpatient status for a period of not less than 180 days from the date of the order of commitment."

[9]Section 1026.2, subdivision (k) states, "In any hearing authorized by this section, the applicant shall have the burden of proof by a preponderance of the evidence."

the "trial" to determine if the defendant is no longer a danger to the health and safety and others due to mental defect, disease, or disorder. (§ 1026.2, subd. (e) ["The court at the end of the one year, shall have a trial to determine if sanity has been restored . . . ."]; see *Hartman v. Summers, supra*, 878 F.Supp. at p. 1340 & fn. 7.) Quite obviously, a sound argument can be made the Legislature intended only that a "hearing" with reduced procedural formalities and due process protections be held during the first step of the release process and a full "trial" was to transpire during the sanity restoration proceedings.

However, we conclude that the due process rights specified by our colleagues in Division Six of this appellate district in the decision of *In re Reyes* (1984) 161 Cal.App.3d 655, 658-659 [207 Cal.Rptr. 763], except for the jury trial right, apply during the hearing that is to occur in this case. (In *People v. Tilbury, supra*, 54 Cal.3d at pp. 60-70, the Supreme Court explained its holding in the case of *In re Franklin* (1972) 7 Cal.3d 126, 133-149 [101 Cal.Rptr. 553, 496 P.2d 465], that there was a jury trial right at a sanity restoration proceeding did not apply to a outpatient placement hearing. *Franklin* was relied on in *Reyes* to support the proposition that there was a jury trial right at an outpatient placement hearing.) This conclusion is based on three interrelated considerations. First, the Attorney General has argued that defendant is entitled to full due process rights to call persons to testify and cross-examine adverse witnesses. In other words, the Attorney General contends that other than a jury trial, defendant is entitled to those rights identified in the decision of *In re Reyes, supra*, 161 Cal.App.3d at pages 658-659.

Second, we have reviewed relevant legislative intent materials concerning the 1984 amendments to section 1026.2 when the Legislature first distinguished between the *hearing* to occur at the outpatient placement proceeding and the *trial* to transpire when the issue of full restoration of sanity was to be resolved. As originally introduced on February 16, 1984, Senate Bill No. 1984 (1983-1984 Reg. Sess.) referred the sanity restoration proceeding occurring one year after release of the defendant to an outpatient treatment program as a "hearing." (Sen. Bill No. 1984 (1983-1984 Reg. Sess.) § 2, p. 6.) On April 2, 1984, Dr. Roger Schock of the Los Angeles County Department of Mental Health, on behalf the California Conference of Local Mental Health Directors, submitted a lengthy list of proposed changes to Senate Bill No. 1984 (1983-1984 Reg. Sess.) as originally introduced. Dr. Schock, without comment, suggested changing the word "hearing" to "trial" in reference to the sanity restoration proceeding. (Letter of Dr. Roger Schock to Sen. Com. on Judiciary Sen. Bill No. 1984 (1983-1984 Reg. Sess.) p. 2.) Three days after Dr. Schock's letter was sent to the Senate Committee on

Judiciary, on April 5, 1984, while Senate Bill No. 1984 was still pending in the upper house, the reference to a "hearing" was replaced with the word "trial" when describing the sanity restoration proceedings which were to occur one year after the defendant was placed in a community treatment facility. (Sen. Bill No. 1984 (1983-1984 Reg. Sess.) as amended Apr. 5, 1984, § 2, p. 6.) Dr. Schock provided no explanation as to why he favored use of the term "trial" to describe the sanity restoration proceeding nor did any legislative committee reports explain the change. (E.g., Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1984 (1983-1984 Reg. Sess.) as amended Apr. 5, 1984, pp. 2, 5; Sen. Republican Caucus Rep. on Sen. Bill No. 1984 (1983-1984 Reg. Sess.) as amended Apr. 24, 1984, p. 3; Legis. Analyst, analysis of Sen. Bill No. 1984 (1983-1984 Reg. Sess.) as amended Aug. 13, 1984, p. 2; Assem. Off. of Research, 3d reading analysis of Sen. Bill No. 1984 (1983-1984 Reg. Sess.) as amended Aug. 21, 1984, p. 1.) Simply stated, there is no evidence as to why the Legislature replaced the term "hearing" with "trial" when describing the sanity restoration proceeding; other than the Senate Committee on Judiciary was responding to Dr. Schock's suggestion.

Third, and most importantly, while discussing the absence of a jury trial right in outpatient placement hearings, the California Supreme Court has noted that other due process protections apply under the circumstances. Specifically, in *People v. Tilbury, supra,* 54 Cal.3d at page 69, the Supreme Court held: "[T]he involvement of a liberty interest does not by itself implicate the right to a jury. Juries have not been found necessary in other proceedings that can result in deprivations of liberty. (E.g., *Morrissey* v. *Brewer* [(1972)] 408 U. S. 471, 488-489 [33 L.Ed.2d 484, 498-499, 92 S.Ct. 2593] [stating the minimum requirements of due process in parole revocation hearings]; *McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 541-551 [29 L.Ed.2d 647, 658-664, 91 S.Ct. 1976] [the due process clause of the Fourteenth Amendment, incorporating the Sixth Amendment, does not require juries in juvenile court proceedings]; *Baldwin* v. *New York* (1970) 399 U.S. 66, 68-74 [26 L.Ed.2d 437, 439-443, 90 S.Ct. 1886] [the same is true in trials of petty offenses].) Instead, the importance of the insanity acquittee's liberty interest is reflected by such a person's right to the substantial procedural safeguards associated with trials, including, among other things, the right to counsel, to a detached and neutral judicial officer, to present evidence, and to cross-examine adverse witnesses. (See § 1026.2, subd. (e) [the hearing on unconditional release is a 'trial' . . . ].)" As can be noted, apart from juries, the Supreme Court has made clear that the "substantial procedural safeguards associated with trials" apply to the outpatient placement hearing. (*People v. Tilbury, supra,* 54 Cal.3d at p. 69.) No doubt, at the end of the immediately foregoing quotation, the Supreme Court referred to

the trial which is to occur in connection with the second step of the release process, sanity restoration trials, while discussing outpatient placement hearings. A sound argument can be made to the California Supreme Court that it should reconsider the analysis that the outpatient placement hearing is to be conducted with the same level of due process protections as a trial. But in this case, the Attorney General has specifically argued that, other than the right to a jury, the due process trial rights identified in the decision of *In re Reyes, supra,* 161 Cal.App.3d at pages 658-659, apply to the outpatient placement hearing. More to the point, even if the Attorney General argued before us that the due process rights described in *Tilbury* were not to be accorded defendant at the outpatient placement hearing, we would be required to reject that contention—the Supreme Court has held otherwise. Given the foregoing analysis of the Supreme Court, we are compelled to reach the same conclusion. (*People v. Martinez* (1999) 20 Cal.4th 225, 240 [83 Cal.Rptr.2d 533, 973 P.2d 512]; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Accordingly, the outpatient placement hearing is to proceed as specified in the decision of *In re Reyes, supra,* 161 Cal.App.3d at pages 657-659, except that no jury trial is to occur. Once the remittitur issues, the trial court can consider defendant's request for appointment of a medical professional to assist in the outpatient placement hearing.

## IV. DISPOSITION

The order summarily denying without a hearing defendant's Penal Code section 1026.2 application for release is reversed. Upon issuance of the remittitur, the court is to hold a hearing consistent with the views expressed in the body of this opinion.

Grignon, J., and Mosk, J., concurred.

On March 18, 2003, the opinion was modified to read as printed above.