Filed 5/12/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093044 |
| Plaintiff and Respondent, | (Super. Ct. No. 08F09790) |
| v. | |
| JEREMY NANCE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Stacy Boulware Eurie, Judge.  Affirmed.

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill, Paul E. O'Connor, Deputy Attorney Generals, for Plaintiff and Respondent.

In 2011, defendant Jeremy Nance was found not guilty by reason of insanity of sexual battery (Pen. Code, § 243.4, subd. (b))[1] and committed to Atascadero State Hospital. Defendant's term of commitment has been extended several times under section 1026.5. He appeals from the trial court's denial of his application for outpatient treatment pursuant to section 1026.2. After hearing defendant's evidence, the trial court granted the People's motion for a "directed verdict," finding defendant "could be a danger to the health and safety of others due to a mental defect, disease, or disorder if under supervision and treatment in the community." On appeal, defendant contends the court erred by weighing the evidence on a motion for directed verdict. Because the trial court was the fact finder, and therefore entitled to weigh the evidence, we will affirm its denial of defendant's application.[2]

## I. BACKGROUND

On October 28, 2020, the trial court held a hearing on defendant's application for outpatient treatment. Defendant was the only witness. After the defendant rested his case, the People made an oral motion "for a directed verdict in that, at this stage . . . the burden of proof has not been met by" defendant.

The court explained it was struck by defendant's "vacillation between whether or not he thinks he needs his medication, whether or not he thinks his medication is doing anything for him, whether or not he perceives his own condition and housing as necessary in terms of his view that he doesn't have a mental illness." The court found defendant had failed to meet his burden "primarily because of his own ability or inability, or refusal, to acknowledge his condition, his access to treatment, his involvement in

---

[1] Undesignated statutory references are to the Penal Code.

[2] Because we do so, we need not address the People's alternative argument that defendant's recommitments under section 1026.5 rendered him ineligible to file an application under section 1026.2.

treatment, and the impact of the medication for which both Counsel and [defendant] have conceded continues to be under involuntary order, although he articulated for himself he's choosing to take it."

The court granted the People's motion: "So the record is clear, the Court finds by a preponderance of the evidence that [defendant] could be a danger to the health and safety of others due to a mental defect, disease, or disorder if under supervision and treatment in the community."

## II.  DISCUSSION

A person who has been found not guilty by reason of insanity and committed to a state hospital may apply to the superior court for release from commitment "upon the ground that sanity has been restored." (§ 1026.2, subd. (a).)  In 1984, the Legislature amended section 1026.2 to "require that a committed person spend one year as a supervised outpatient before applying for a sanity-restoration hearing" to obtain unconditional release.  (*People v. Tilbury* (1991) 54 Cal.3d 56, 62.)  The statute now "involves what has been described as a two-step process."  (*People v. Soiu* (2003) 106 Cal.App.4th 1191, 1196.)  This case involves the first step in the release process regarding outpatient placement:  "The court shall hold a hearing to determine whether the person applying for restoration of sanity would be a danger to the health and safety of others, due to mental defect, disease, or disorder, if under supervision and treatment in the community.  If the court at the hearing determines the applicant will not be a danger to the health and safety of others, due to mental defect, disease, or disorder, while under supervision and treatment in the community, the court shall order the applicant placed with an appropriate forensic conditional release program for one year."  (§ 1026.2, subd. (e).)  At the outpatient placement hearing, the applicant has "the burden of proof by a preponderance of the evidence."  (*Id*., subd. (k).)

"The second step in the release process, often referred to as the restoration of sanity trial, normally occurs one year after the defendant has been placed in an outpatient

3

program.  Typically after one year, the court holds a *trial* to determine whether the defendant's sanity has been restored.  Section 1026.2, subdivision (e), defines restoration of sanity as follows, '[T]he applicant is no longer a danger to the health and safety of others, due to mental defect, disease, or disorder.'  Unlike during the first step in the proceedings, the restoration of sanity trial requires the defendant to demonstrate that he or she is no longer a danger to the health and safety of others under all circumstances." (*People v. Soiu, supra*, 106 Cal.App.4th at p. 1196.)  Under *In re Franklin* (1972) 7 Cal.3d 126, a defendant is entitled to a jury at hearings on unconditional release.  (*Id*. at p. 131; see *People v. Tilbury, supra*, 54 Cal.3d at p. 60.)

The sole argument raised in defendant's opening brief is that his evidence was sufficient for a fact finder to reasonably conclude he qualified for conditional release.  In essence, defendant contends that because his testimony was equivocal on his need for medication, his application was not suitable for directed verdict because the trial court cannot weigh evidence in directing a verdict.  As we will explain, his argument fails because the prosecution's motion has been mischaracterized by the parties and the trial court as one for a directed verdict.

Labeling a motion as one for a directed verdict does not make it so.  (*Williams v. City of Belvedere* (1999) 72 Cal.App.4th 84, 89, italics added.)  "A motion for a directed verdict is a procedural device that is used to screen out cases that are too weak to support a *jury* verdict.  Such a motion may be granted ' "only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled . . . the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given." ' " (*Ibid.*, italics added.)  "Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is

4

not justified in taking the case from the jury." (*Estate of Lances* (1932) 216 Cal. 397, 400; accord *People v. Severance* (2006) 138 Cal.App.4th 305, 319.) A jury is therefore a prerequisite to a directed verdict. Defendant argues the first step determination of whether he would be a danger to the health and safety of others due to mental defect, disease, or disorder if under supervision and treatment "is normally a question of fact subject to determination by a fact-finder such as a jury." He is mistaken. In *People v. Tilbury, supra*, 54 Cal.3d 56, our Supreme Court explained that a defendant is not entitled to a jury trial on this question. (*Id.* at p. 59.) Hence, there was no jury at defendant's hearing. In *People v. Severance, supra*, 138 Cal.App.4th 305, cited by defendant, at the end of a jury trial on a defendant's plea of not guilty by reason of insanity, the court granted the prosecution's motion for a directed verdict of sanity. (*Id.* at p. 309.) This case does not support defendant's suggestion that his application for outpatient treatment presented a question for a jury.[3] Additionally, in *Severance*, this court explained the sufficiency of evidence standard of review would have applied "if we were reviewing a sanity determination by the court sitting *as the trier of fact*. [Citation.] Here, however, the *jury* was the trier of fact, and the trial court *took* the issue of sanity from the jury when it directed a verdict of sanity. Thus, the appropriate standard of review is the one for a directed verdict." (*Id.* at p. 319.) In this appeal, defendant advocates for the standard of review for a directed verdict, but it does not apply because the trial court was the trier of fact and thus it did not take the issue from the jury.

Defendant cites *People v. Mapp* (1983) 150 Cal.App.3d 346, to support the use of a directed verdict at the close of his case. *Mapp* involved an earlier version of section 1026.2 that did not require a term of outpatient treatment as a prerequisite to

---

[3] Similarly, *People v. Blakely* (2014) 230 Cal.App.4th 771, on which defendant also relies, was an appeal from a directed verdict of sanity after the presentation of evidence in the sanity phase of a jury trial. (*Id.* at pp. 773-774.)

5

unconditional release. (*Id.* at p. 348; see Stats. 1980, ch. 547, § 4, p. 1506; *People v. Tilbury, supra*, 54 Cal.3d at p. 60.) In *Mapp*, the trial court had directed the jury to find the defendant's sanity had not been restored. (*Mapp, supra*, at p. 348.) The appellate court held that because *In re Franklin, supra*, 7 Cal.3d 126 had created a right to a jury trial in those unconditional release proceedings, a motion for directed verdict was permissible "where the insufficiency of the evidence warrants it." (*Mapp, supra*, at p. 351.) Because the proceeding at issue in this appeal did not involve a jury or the right to a jury, *Mapp* is inapplicable.

At the close of defendant's case, the prosecution made an oral "motion for a directed verdict in that, at this stage, I would argue that the burden of proof has not been met by" defendant. The prosecution was effectively moving for judgment in a *court* trial, likely attempting to avoid waiving its right to offer evidence in support of its defense or rebuttal if the motion was denied. (See Code Civ. Proc., § 631.8, subd. (a) ["After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment"]; § 1118.) The court weighs the evidence before ruling on such a motion. (Code Civ. Proc., § 631.8, subd. (a); § 1118.) Where a motion is not a true motion for a directed verdict, on appeal we do not view the record in the light most favorable to the judgment. (See *Williams v. City of Belvedere, supra*, 72 Cal.App.4th at p. 89 ["If this was an appeal from a true directed verdict, we would be obligated to view the record in the light most favorable to the appellant. [Citation.] However since the trial court acted as a trier of fact, the court's factual findings, express or implied, must be affirmed so long as they are supported by substantial evidence"].) The court found "by a preponderance of the evidence that [defendant] could be a danger to the health and safety of others due to a mental defect, disease, or disorder if under supervision and treatment in the community." Defendant has not challenged the trial court's determination in its capacity as factfinder, but rather his

6

appeal hinges on the incorrect assertion that the trial court was not permitted to weigh the evidence before it. Because the trial court was the fact finder, we must reject defendant's arguments on appeal.

### III.  DISPOSITION

The judgment (order) denying defendant's application for outpatient treatment is affirmed.

/S/

---
RENNER, J.


We concur:

/S/

---
BLEASE, Acting P. J.

/S/

---
ROBIE, J.

7