Filed 8/16/22 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | B314992 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. ZM014741 & ZM011411) |
| v. | |
| FRANKLIN PEYTON et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Appellants. | NO CHANGE IN THE JUDGMENT |


THE COURT:

It is ordered that the opinion filed herein on July 28, 2022, be
    modified as follows:

1.  On page 17, before the first full sentence, which begins with "Petitioners," insert the following:

>  Citing the Legislative Counsel's Digest to the 2013 bill that amended the Act to its current form, which indicates that the 2013 bill was meant to "make nonsubstantive, organizational changes" to the Act (Legis. Counsel's Dig., Sen. Bill No. 295 (2013-2014 Reg. Sess.), Stats. 2013, ch. 182, Summary Dig.), petitioners contend we must read the current statutory language to have the same effect as the November 2006 version of the Act.  Because the Digest is "not part of the law and cannot alter the scope, meaning, or intent of the bill itself" (*People v. Vang* (Aug. 5, 2022, C090365) __Cal.App.5th__ [2022 Cal.App.Lexis 685, *37]), and because the Digest's characterization of the 2013 amendments conflicts with the text of the Act, we give effect to the Act's text over the Digest's commentary.  (*In re Marriage of Stephens* (1984) 156 Cal.App.3d 909, 916-917 ["Where the [legislative counsel's] digest conflicts with the unambiguous language of the statute, . . . the digest is not controlling."].)

2.  On page 17, replace the entire last paragraph beginning with "Lastly," with the following paragraph:

>  Lastly, Grassini argues that *Smith 2022* and the other cases reading the Act as making a direct petition for unconditional discharge contingent upon a favorable Department evaluation are wrongly decided.  This argument lacks merit for all of the reasons set forth above.

\*     \*     \*

There is no change in the judgment.

Grassini's petition for rehearing is denied.

_____

LUI, P. J.                    CHAVEZ, J.                    HOFFSTADT, J.

Filed 7/28/22 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | B314992 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. ZM014741 & ZM011411) |
| v. | |
| FRANKLIN PEYTON et al., | |
| Defendants and Appellants. | |


APPEAL from orders of the Superior Court of Los Angeles County, Robert S. Harrison, Judge. Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant Franklin Peyton.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant Randee Grassini.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Viet H. Nguyen, and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Franklin Peyton (Peyton) and Randee Grassini (Grassini) (collectively, petitioners) have been civilly committed under our State's Sexually Violent Predator Act (the Act) (Welf. & Inst. Code, §§ 6600 et seq.).[1]  A person committed under the Act may be *unconditionally discharged* (if they no longer meet the definition of a "sexually violent predator" (SVP)) (§ 6604.9, subd. (d)), or *conditionally released* into the community under supervision of the Director of State Hospitals (the Director) (if they still meet the definition of a "sexually violent predator," but the community can be "adequately protect[ed]" because they are being supervised and treated) (*ibid.*; § 6608, subd. (g)).  If the Director's annual psychological evaluation of an SVP indicates that they no longer meet the SVP definition, the SVP may directly petition for unconditional discharge.  (§ 6604.9, subds. (d) & (f).)  But what if there is no such finding by the Director's evaluating psychologist?  May the SVP still directly petition for unconditional discharge, or must the SVP instead follow the usual, two-step process for obtaining unconditional discharge— that is, by seeking conditional release for a year and then

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

petitioning for unconditional discharge (§ 6608, subd. (m))?  Our colleagues in *People v. Smith* (2022) 75 Cal.App.5th 332, 336, 344 (*Smith 2022*) held that the Act does not authorize an SVP to directly petition for unconditional discharge without a favorable evaluation from the Director, and that this construction of the Act did not deny an SVP due process.  We agree with *Smith*'s statutory and constitutional holdings, and publish to add further arguments supporting this conclusion as well as to respond to additional points raised by the petitioners in this case.  We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Underlying Criminal Conduct

#### A. *Peyton*

Peyton was born in May 1947.

In 1986, he pled guilty in a California court to 11 counts of lewd and lascivious acts.  (Pen. Code, § 288, subd. (a)).  These counts grew out of Peyton's sexual molestation of children, in 1983 and 1984, who were between the ages of 5 and 11 and who had been entrusted to the care of Peyton's then-wife, who often babysat for friends and neighbors.  Peyton was sentenced to prison for 26 years.

Also in 1986, Peyton was convicted of three counts of sexual assault on a child in a Colorado court.  These counts grew out of Peyton's sexual molestation of three children who were 7 and 8 years old.  He was sentenced to prison for 16 years, to be served concurrently with his California sentence.

Peyton completed his criminal sentence and was transferred to a California mental health facility in September 2005.

3

**B.** *Grassini*

Grassini was born in December 1954.

In 1976, Grassini was convicted in a Nevada court of gross lewdness and anal intercourse with a 9-year-old child. He was sentenced to six years in prison.

In 1987, Grassini pled no contest in a California court to 12 counts of lewd and lascivious acts. The counts grew out of Grassini's conduct with three children between the ages of 4 and 12. He was sentenced to 26 years in state prison.

Grassini completed his criminal sentence and was transferred to a California mental health facility in 2001.

## II. SVP Commitment Proceedings

**A.** *Peyton*

In June 2009, the People filed a petition to commit Peyton as an SVP under the Act.

In August 2015, Peyton admitted the petition's allegations over his counsel's objection, and, on the basis of that admission, was found to be an SVP and committed to the Director's custody.

Peyton has thereafter refused all treatment.

The Director conducted a psychological evaluation of Peyton every year between 2016 and 2020, and each of those evaluations concluded that Peyton was not suitable for unconditional discharge or conditional release. In light of these conclusions, the trial court continued Peyton's commitment as an SVP every year.

**B.** *Grassini*

In 1999, the People filed a petition to commit Grassini as an SVP under the Act. In 2001, a jury found the petition true, and Grassini was committed to the care of the Department of State Hospitals for a two-year commitment.

4

In March 2007, the People filed a petition to recommit Grassini under the Act. The matter proceeded to a three-day bench trial in January 2015. The trial court ruled that Grassini still qualified as an SVP, and recommitted him to the Director's custody.

The Director conducted a psychological evaluation of Grassini every year between 2016 and 2020, and each of those evaluations concluded that Grassini was not suitable for unconditional discharge or conditional release. In light of these conclusions, the trial court continued Grassini's commitment as an SVP every year.

### C.     *Marriage*

In May 2014, while living in the same mental health facility, Peyton and Grassini married.

## III.     **Petitioners' Motion for Unconditional Discharge**

In March 2021, petitioners filed a joint petition directly seeking unconditional discharge. To their petition, they attached four psychological evaluations—two opining that Peyton no longer met the SVP definition and two opining that Grassini no longer did.[2] Petitioners thereafter filed a supplemental petition arguing that denying them the right to directly petition for unconditional discharge violated due process.

While this petition was pending, the Director conducted its annual psychological evaluation of Peyton for 2021, which concluded that he was not suitable for unconditional discharge or conditional release.

---

[2]     One of the two reports on Grassini was from a psychologist who had opined that Grassini had not met the SVP definition when she evaluated him back in 2014.

The People opposed the joint petition.

At a July 2021 hearing, the trial court denied the joint petition insofar as it requested unconditional discharge.  The court reasoned that "[a] petition for an *unconditional* discharge may only be made when the [D]irector . . . authorizes such a petition . . . or at least one year after the SVP committee has been on a conditional release."  Because no authorization from the Director had been shown, the court denied the petition for unconditional discharge but, with petitioners' consent, construed it as a petition for conditional release.[3]

## IV.    Appeal

Petitioners filed this timely appeal of the denial of their joint petition for unconditional discharge.

## DISCUSSION

Petitioners argue that the trial court erred in denying their joint petition for unconditional discharge.  In examining these arguments, we must interpret the Act, interpret the due process clause, and apply our legal determinations to undisputed facts; our review is accordingly de novo.  (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857 [statutory interpretation]; *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 934 [constitutional interpretation]; *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912 [application of law to undisputed facts].)  Before addressing the merits of petitioners' arguments, we start by providing an overview of the Act.

## I.    The Act

The purpose of the Act is twofold.  The "primary" objective of the Act is to "protect the public from 'a small but extremely

---

[3]    The petition for conditional release was set for hearing later in 2021, and is not part of this appeal.

6

dangerous group of sexually violent predators . . .'" who are "mentally ill."  (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1192 (*Hurtado*), quoting Stats. 1995, ch. 763, § 1; *People v. Otto* (2001) 26 Cal.4th 200, 214 (*Otto*); *State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 344 (*State Dept.*).  A secondary objective is "to provide mental health treatment for their [mental] disorders."  (*State Dept.*, at p. 344.)

### A.     *Initial commitment as an SVP*

#### 1.     *Screening for possible SVP status*

When an inmate is nearing the end of his or her prison term and may qualify as an SVP, the State Department of State Hospitals (the Department) must "evaluate" that inmate "in accordance with a standardized assessment protocol . . . to determine whether the [inmate] is [an SVP]" as defined by the Act; if the Department so determines, it must ask the People to file a petition to have the inmate formally declared an SVP under the Act.  (§§ 6601, subds. (a), (c) & (h)(1).)

#### 2.     *Formal proceedings to determine SVP status*

If the People elect to file a petition to have the inmate declared an SVP, the trial court conducts two proceedings.

First, the court holds a "probable cause hearing," the goal of which (and as its name suggests) is to "determine whether there is probable cause to believe that" the inmate *may be* an SVP.  (§ 6602, subd. (a).)  Second, if the court determines that probable cause so exists, the court conducts a trial on the question of whether the inmate *is* an SVP.  At this trial, the People bear the burden of proving SVP status to a jury beyond a reasonable doubt.  (§§ 6603, subds. (a) & (b), 6604.)

For purposes of both proceedings, an inmate qualifies as an SVP if (1) the inmate "has been convicted of a sexually violent

7

offense against one or more victims," (2) the inmate "has a diagnosed mental disorder that makes [him or her] a danger to the health and safety of others," and (3) the mental disorder makes it "likely" that the inmate "will engage in future predatory acts of sexually violent criminal behavior if released from custody." (§ 6600; *People v. Jackson* (2022) 75 Cal.App.5th 1, 7-8 (*Jackson*).) In proving the third element, "'likely' . . . does not mean more likely than not; instead, the standard of likelihood is met 'when "the person presents a *substantial danger*, that is a *serious and well-founded risk*, that he or she will commit such crimes if free in the community."'" (*People v. Shazier* (2014) 60 Cal.4th 109, 126, italics in original.)

        3.    *Civil commitment*

If at the trial an inmate is found to be an SVP, he or she is civilly committed to the Department's custody "for an indeterminate term" "for appropriate treatment and confinement in a secure facility." (§§ 6604, 6606, subd. (a) [obligating Department to provide treatment for the SVP's "diagnosed mental disorder"].) Before the voters passed Proposition 83 in 2006, the maximum term of commitment had been two years, although the People still had the option of filing a new petition and again establishing at trial that the inmate was an SVP beyond a reasonable doubt. (*People v. McKee* (2010) 47 Cal.4th 1172, 1183-1184 (*McKee*).)

**B.**    ***Terminating commitment as an SVP***

While an SVP is civilly committed, the SVP must be evaluated by a "professionally qualified person" "at least once every year" to assess (1) whether they "currently meet[] the [SVP] definition," and if they no longer do, whether the SVP "should . . . be considered for unconditional discharge," and (2) whether they

8

are suitable for "conditional release to a less restrictive alternative." (§ 6604.9, subds. (a), (b) & (d).) The Director is bound by the evaluator's recommendation and has no discretion to take a different position. (*People v. Landau* (2011) 199 Cal.App.4th 31, 37-39 (*Landau 2011*); *People v. Smith* (2013) 212 Cal.App.4th 1394, 1399, fn. 2 (*Smith 2013*).)

Because the standards and procedures for unconditional discharge and conditional release differ, we examine each in more detail. We start with conditional release.

1.    *Conditional release*

Under the Act, an SVP is suitable for conditional release to a less restrictive alternative (typically, placement in the community rather than the secure facility where he or she has been housed as an SVP) if he or she is no longer "a danger to the health and safety of others" because it is not "likely that he or she will engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under the supervision and treatment in the community." (§ 6608, subd. (g); see also § 6607, subd. (a); *People v. McCloud* (2021) 63 Cal.App.5th 1, 9-10 (*McCloud*).)

The applicable procedures and standards for assessing whether conditional release is appropriate vary, depending on the findings of the Department's annual evaluation.

If the Department's annual evaluation indicates that the SVP is suitable for conditional release because such release is "in the best interest" of the SVP and "conditions can be imposed that adequately protect the community," then the Director or the SVP may file a petition for conditional release under section 6608. (§§ 6604.9, subds. (d) & (e) [authorizing Director to file], 6608, subd. (a) [authorizing SVP to file].) In light of the Director's pro-

conditional release evaluation, the SVP is presumptively entitled to conditional release and *the State* bears the burden of showing, by a preponderance of the evidence, that "conditional release is not appropriate." (§ 6608, subd. (k); *McCloud*, *supra*, 63 Cal.App.5th at pp. 9-10.)[4]

By contrast, if the Department's annual evaluation indicates that the SVP is *not* suitable for conditional release, the SVP may nonetheless file a petition under section 6608. (§ 6608, subd. (a).) In this scenario, the trial court must obtain the

---

[4] Under the November 2006 version of the Act, an SVP with a recommendation in favor of conditional release could alternatively seek that release under section 6605 as well. (*Smith 2013*, *supra*, 212 Cal.App.4th at p. 1404 [so holding].) Under that version of the Act, section 6605, subdivision (b) required the Director, upon giving the SVP a favorable recommendation for conditional release, to "authorize" the SVP "to petition the court for conditional release . . . or for an unconditional discharge." (Former § 6605, subd. (b) (2006).) Viewing the statute as "ambiguous" as to whether an SVP in this circumstance could proceed under other subdivisions of section 6605, *Smith 2013* construed that language to so allow and thereby give an SVP in this circumstance the option of proceeding under section 6608 *or* under section 6605. (*Smith 2013*, at pp. 1402-1404.) The current version of the Act deleted the 2006 version of subdivision (b) of section 6605, and, as noted in the text, replaced it with section 6604.9, subdivision (e), which more definitively directs an SVP with a favorable recommendation to "petition using the procedures in section 6608." We reject petitioners' argument that the current version was meant merely to "reorganize" the Act without making any substantive changes to the 2006 version of the Act because the changes our Legislature enacted with the necessary two-thirds majority *did* make substantive changes.

Director's then-current recommendation regarding the SVP's suitability for conditional release. (*Id.*, subd. (e).) The court then makes an initial assessment as to whether the petition is "frivolous" (*id.*, subd. (b)(1)), which asks whether the petition "'indisputably has no merit'" because "any reasonable attorney would agree that the petition on its face and any supporting attachments [a]re totally and completely without merit" (*McKee*, *supra*, 47 Cal.4th at p. 1192; *People v. Olsen* (2014) 229 Cal.App.4th 981, 999).[5] If not frivolous, the matter can proceed to a hearing, where the SVP bears the burden of showing, by a preponderance of the evidence, that conditional release is appropriate. (§ 6608, subd. (k); *McCloud*, *supra*, 63 Cal.App.5th at p. 10.)

### 2. *Unconditional discharge*

Under the Act, an SVP is entitled to unconditional discharge if he "no longer meets the [SVP] definition" because the SVP's "diagnosed mental disorder has so changed that he or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior if discharged." (§§ 6604.9, subd. (d), 6605, subd. (a)(2).)

The applicable procedures and standards for assessing whether unconditional discharge is appropriate also vary, depending on the findings of the Department's annual evaluation.

---

[5] If the SVP has previously filed a petition under section 6608 without a favorable suitability evaluation by the Department, and if that petition was denied as frivolous or meritless, the court must deny any subsequent petition "unless it contains facts upon which a court could find that the condition of the committed person had so changed that a hearing was warranted." (§ 6608, subd. (a).)

11

If the Department's annual evaluation indicates that the SVP is suitable for unconditional discharge because he or she "no longer meets the [SVP] definition," the Director "shall" authorize the SVP to file a petition for unconditional discharge under section 6605.  (§ 6604.9, subds. (d) & (f); *Smith 2022, supra*, 75 Cal.App.5th at p. 337; *Olsen, supra*, 229 Cal.App.4th at p. 992.)  Under section 6605, and in light of the Director's evaluation that the SVP no longer qualifies as an SVP, the SVP is strongly presumed to be entitled to unconditional discharge and the State bears the burden of proving, beyond a reasonable doubt, that the SVP's "diagnosed mental disorder remains such that he or she is a danger to the health and safety of others and is likely to engage in sexually violent criminal behavior if discharged" from a secure facility.  (§ 6605, subd. (a)(3).)  In this regard, the People are essentially required to carry the same burden of showing SVP status as they did when initially committing the inmate.  (See *People v. Cheek* (2001) 25 Cal.4th 894, 899.)  After evaluating the evidence, the trial court has the power to (1) grant an unconditional discharge, (2) place the SVP on conditional release, or (3) deny the petition altogether and leave the SVP in a secure facility.  (*People v. Landau* (2016) 246 Cal.App.4th 850, 881-882 (*Landau 2016*).)

If the Department's annual evaluation indicates that the SVP is *not* suitable for unconditional discharge, then the SVP has a two-step path to unconditional discharge—namely, (1) he or she must file a petition for conditional release under section 6608 (§ 6608, subd. (a)); and (2) after one year on conditional release, he or she may file a petition for unconditional discharge under section 6605 (§ 6608, subd. (m)).  (*McKee, supra,* 47 Cal.4th at p.

1187; *Smith 2022*, *supra*, 75 Cal.App.5th at p. 337; *McCloud*, *supra*, 63 Cal.App.5th at p. 15, fn. 11.)

Separate and apart from the annual review process, if the Department otherwise develops "reason to believe" that an SVP is "no longer" an SVP, it is obligated to file a petition for a writ of habeas corpus seeking the inmate's unconditional discharge. (§§ 6605, subd. (c), 7250.)

## II.    Analysis

It is undisputed that the Director has not found Peyton or Grassini suitable for unconditional discharge or conditional release. Petitioners nevertheless argue that they are entitled to directly petition for unconditional discharge under section 6605 because (1) the Act authorizes such a petition, and (2) even if the Act does not, due process requires us to construe the Act to permit such a petition (e.g., *People v. Miracle* (2018) 6 Cal.5th 318, 339 ["'a statute must be construed, if reasonably possible, in a manner that avoids a serious constitutional question'"]).

### A.    *Does the Act authorize an SVP to directly petition for unconditional discharge under section 6605 without a favorable finding of suitability by the Director?*

In interpreting the Act, we start with its text. (E.g., *People v. Partee* (2020) 8 Cal.5th 860, 867.) As explained above, the text of the Act provides that a trial court is to directly entertain a petition for unconditional discharge under section 6605 if—and only if—the Department, in its annual evaluation, has concluded that the "person no longer meets the definition of a sexually violent predator." (§ 6604.9, subds. (d) & (f).) Without such an evaluation, the SVP must follow the two-step procedure, outlined above, that obligates the SVP to petition for conditional release under section 6608 and, after a year on such release, to petition

13

for unconditional discharge under section 6605.  (§ 6608, subds. (a) & (m).)  Every decision interpreting this text has come to the same conclusion.  (*Smith 2022*, *supra*, 75 Cal.App.5th at p. 337 [same]; *McCloud*, *supra*, 63 Cal.App.5th at p. 15, fn. 11 [same].)  We add our voice to this unanimous chorus of precedent.

Petitioners nevertheless proffer five reasons why, in their view, we should sing a different tune.

First, petitioners argue that the text of section 6605 does not *explicitly* specify that its procedures apply only when the Department's annual evaluation concludes that the SVP is no longer an SVP.  This is true, but unpersuasive.  Although *section 6605* does not explicitly prohibit an SVP from directly invoking its provisions without a favorable evaluation by the Department, the Act *as a whole* effectively dictates that prohibition.  (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856 [""""When we interpret a statute, ' . . . . [w]e do not examine th[e statutory] language in isolation, but in the context of the statutory framework as a whole . . . ."""""]; *Lopez*, *supra*, 12 Cal.5th at p. 858 ["we do not read the text [of a statute] in a vacuum"].)  Section 6604.9 explicitly erects a fork in the procedural road:  If the Department's annual evaluation recommends unconditional discharge, section 6604.9 dictates that a petition for unconditional discharge "shall" be entertained *under section 6605* (§ 6604.9, subds. (d) & (e)); but if the Department's annual evaluation recommends a conditional release, section 6604.9 dictates that a petition for conditional release "shall" be entertained *under section 6608* (*id.*, subds. (d) & (f)).  Section 6608 goes on to provide that a petition for conditional release "shall be permitted . . . with or without the recommendation or concurrence of the Director of State Hospitals" (§ 6608, subd. (a));

tellingly, section 6605 has no such proviso. Because we must presume that our Legislature's omission of such language from 6605 is intentional (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73 ["When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning."]; *Walt Disney Parks & Resorts U.S., Inc. v. Superior Court* (2018) 21 Cal.App.5th 872, 879 [same]), we must presume that the right to directly petition under section 6605—unlike the right to do so under section 6608—*is* contingent on the Director's favorable recommendation. Indeed, this is confirmed by the fact that section 6605—unlike section 6608— has no provision for seeking the Director's input, which dovetails with the notion that petitioners are not permitted to petition for unconditional discharge under section 6605 without the Director's recommendation.

Second, petitioners argue that section *6604.9, subdivision (f)* authorizes an SVP to directly petition for unconditional discharge under section 6605. It does not. Subdivision (f) provides, in pertinent part, that a trial court, "upon receiving a petition for unconditional discharge, shall order a show cause hearing, pursuant to the provisions of section 6605 . . . ." (§ 6604.9, subd. (f).) Although *subdivision (f)* itself does not explicitly limit such petitions to those premised on the Department's favorable annual evaluation, *subdivision (d)* of that statute spells out that very limit: It obligates the Department to "file[]" a "petition . . . with the court" if it makes a favorable recommendation for unconditional discharge, and it is *this* petition—that is, one premised on the Department's favorable

15

evaluation—that triggers the court's duty under subdivision (f) to proceed under section 6605.

Third, petitioners argue that sections 6605 and 6608 are treated similarly for some purposes (such as the fact that the Department is obligated to simultaneously evaluate an SVP's suitability for unconditional discharge under section 6605 as well as for conditional release under section 6605), such that the two procedures should be deemed to be similar for *all* purposes, including that an SVP may directly petition for relief under either section. Again, we reject this argument because our Legislature explicitly provided that a section 6608 petition—but not a section 6605 petition—may be filed *without* a favorable evaluation by the Department. (Compare § 6608, subd. (a) with § 6605.)

Fourth, petitioners argue that a prior version of the Act suggested that an SVP may directly petition for unconditional discharge. Petitioners cite the November 2006 version of section 6608, subdivision (a), which provided: "Nothing in this article shall prohibit the person who has been committed as a sexually violent predator from petitioning the court for conditional release or an unconditional discharge without the recommendation or concurrence of the Director . . . ." (Former § 6608, subd. (a), italics added; accord, *McKee, supra*, 47 Cal.4th at p. 1187 [applying this version of the statute]; *People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1406-1407 [same].) While this language is undoubtedly supportive of petitioners' current position, this language is nevertheless irrelevant because it has since been deleted and replaced with the current—and, critically, *different*—

16

language analyzed above.[6]  (*Kaanaana v. Barrett Bus. Servs.* (2021) 11 Cal.5th 158, 170 ["When the Legislature alters statutory language, 'as for example when it deletes express provisions of the prior version,' the presumption is that it intended to change the law's meaning.'"].)  Petitioners, citing *Smith 2013*, *supra*, 212 Cal.App.4th at p. 1402, relatedly argue that the 2006 version created "significant ambiguity" regarding the relationship between sections 6605 and 6608.  This is doubly irrelevant because the 2006 version has been superseded and because the "ambiguity" *Smith 2013* addressed is whether an SVP could file a petition for conditional release under section 6605 under a provision of the November 2006 version of the Act that has since been repealed.  (*Ibid.*)

Lastly, petitioners argue that *Smith 2022* and the other cases reading the Act as making a direct petition for unconditional discharge contingent upon a favorable Department evaluation are wrongly decided because they are based on a "casual reading" of the Act.  Aside from its breezily disrespectful tone, this argument lacks merit for all of the reasons set forth above.

---

[6]  Interestingly, the 2006 version of section 6608 was a departure from the original 1995 version of the statute, which— like the current language—contemplated a two-step process:  The 1995 version provided that "[n]othing in this article shall prohibit the person who has been committed as a sexually violent predator from petitioning the court for conditional release and subsequent unconditional discharge without the recommendation or concurrence of the Director of Mental Health."  (§ 6608, subd. (a), 1995 Stats. ch. 763, § 3.)  The voters in Proposition 83 amended this language to the language cited by petitioners, and then our Legislature in 2013 amended the section to its current verbiage.  (Sen. Bill No. 295, Stats. 2013, ch. 182, § 3.)

**B.    *Does due process obligate us to construe the Act to permit an SVP to directly petition for unconditional discharge?***

Both the federal and California Constitutions guarantee that a person "may not be deprived of life, liberty, or property without due process of law . . . ."  (Cal. Const., art. I, § 7; U.S. Const., 14th Amend.)

It is undisputed that petitioners' liberty is at stake. Because "'commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection'" (*Foucha v. Louisiana* (1992) 504 U.S. 71, 80 (*Foucha*); *Addington v. Texas* (1979) 441 U.S. 418, 425), petitioners' civil commitments as SVPs implicate their liberty interests and are accordingly entitled to due process protection.  (*Otto*, *supra*, 26 Cal.4th at p. 209; *Jackson*, *supra*, 75 Cal.App.5th at p. 21.)

Due process has been construed as encompassing both substantive and procedural rights.  We examine each subset of rights, and then consider petitioners' further arguments.

1.    *Substantive due process*

In the context of civil commitment, substantive due process refers to the conditions under which such commitment—and the resulting deprivation of liberty—is permitted *at all*, and "regardless of the fairness of the procedures used."  (*Zinermon v. Burch* (1990) 494 U.S. 113, 135.)  Civil commitment comports with substantive due process only if the person committed is "both [(1)] mentally ill and [(2)] dangerous."  (*Foucha*, *supra*, 504 U.S. at p. 77; *McKee*, *supra*, 47 Cal.4th at p. 1188 [requiring "'proof of dangerousness with the proof of some additional factor, such as a "mental illness" or "mental abnormality"'"].)  Once

18

these prerequisites have been established—either by clear and convincing evidence, or inferentially by a prior finding that the person is not guilty of a crime by reason of insanity—that person may be indefinitely committed, "subject to periodic review of the [person's] suitability for release." (*Jones v. United States* (1983) 463 U.S. 354, 363-364, 368 (*Jones*); *Addington, supra*, 441 U.S. at pp. 427-428; *Foucha*, at p. 76.) However, if at some later point in time, circumstances change and the committed person is found no longer to be mentally ill or dangerous, he or she must be released. (*Foucha*, at p. 77; *Kansas v. Hendricks* (1997) 521 U.S. 346, 364 (*Hendricks*); *McKee*, at p. 1194; *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1177; *Cheek, supra*, 25 Cal.4th at p. 898.) A State may permissibly require an indefinitely confined person to prove his or her entitlement to release by a preponderance of the evidence. (*Jones*, at pp. 357-358, 370; *McKee*, at p. 1191 ["the requirement that [the committed person], after his initial commitment, must prove by a preponderance of the evidence that he is no longer an SVP does not violate due process"].)

The two-step procedure an SVP must follow under the Act to obtain unconditional discharge when the Department's annual evaluation does not recommend such a discharge comports with these requirements of substantive due process. That is because an SVP in this circumstance has already been found beyond a reasonable doubt to be a person with a mental illness and who is dangerous, is permissibly being indefinitely confined while subject to periodic review, and has the opportunity establish an entitlement to release upon proof that he is no longer mentally ill or dangerous. (Accord, *McKee, supra*, 47 Cal.4th at p. 1191.) Whether a committed person is entitled to different *procedures*

19

for obtaining an unconditional discharge is a question of *procedural* due process, to which we turn next.

### 2. *Procedural due process*

"Once it is determined that due process applies, the question remains what process is due." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481.) Due process is inherently "flexible" and "calls for such procedural protections as the particular situation demands" (*ibid.*; *Mathews v. Eldridge* (1976) 424 U.S. 319, 334 (*Mathews*)). In calibrating which procedural protections a particular situation demands, courts traditionally consider the following factors: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official." (*Otto*, *supra*, 26 Cal.4th at p. 210; *Mathews*, *supra*, 424 U.S. at pp. 334-335.)

In arguing that an SVP should be able to directly file a petition for unconditional discharge under section 6605 without a favorable evaluation by the Department, petitioners present the following question: Is an SVP denied procedural due process because the Act requires the SVP to first petition for a one-year conditional release before seeking unconditional discharge—rather than allowing the SVP to directly petition for an unconditional discharge—when the Department's most recent

20

evaluation does not find the SVP suitable for an unconditional discharge?

We conclude the answer is "no."

Precedent establishes that it does not offend procedural due process to require an individual who is civilly committed due to a mental illness that renders him dangerous to proceed through two steps before an unconditional discharge. That was the holding in *Beck*, *supra*, 47 Cal.App.4th 1676. *Beck* dealt with an individual found not guilty by reason of insanity, and the statutory scheme at issue in that case authorized such an individual's unconditional discharge only after he first spent a year in a community-based outpatient treatment program. (*Id.* at p. 1681.) In upholding this two-step procedure as consistent with procedural due process, *Beck* cited "three considerations": (1) the individual's "acquittal by reason of insanity entails a finding that the defendant in fact committed a criminal offense," which "supports an inference of potential dangerousness and possible continuing mental illness," (2) "the process of evaluating the defendant for a prolonged period in a noninstitutional setting has obvious merit" because "[i]t provides a 'trial run' for the defendant's release, conducted under conditions resembling what the defendant will later find in the community," and (3) "the fact that the participation in an outpatient program involves a lesser interference with personal liberty than institutional commitment makes it easier to justify a longer period of restriction." (*Id.*, at p. 1684.) All three considerations are also true under the Act: (1) the initial finding of SVP status *requires* proof of mental illness and dangerousness beyond a reasonable doubt, (2) the Act provides for a one-year "trial run" in the community in the form of conditional release, and (3) conditional release entails less

21

interference with personal liberty than requiring the SVP to remain in a secure facility.  Petitioners attempt to distinguish *Beck* on the ground that it involved a person found not guilty by reason of insanity and hence, in their view, someone whose civil commitment occurs *in lieu* of a criminal sentence rather than after that sentence has been completed, but they are wrong: Such commitments *can* extend beyond what would have been the length of the insanity acquittee's criminal sentence (Pen. Code, § 1026.5, subd. (b)(1)).  This distinction does not in any event undercut the applicability of *Beck*'s reasoning to the Act.  Thus, despite petitioners' repeated complaint that it is "cumbersome," we conclude that that Act's two-step process for obtaining unconditional discharge does not offend procedural due process.

To be sure, the Act also has an expedited, one-step procedure for obtaining unconditional discharge that applies when the Department's evaluator finds that the SVP is suitable for such a discharge.  The availability of such an expedited procedure makes eminent sense, for there is no reason for a period of supervision and treatment if the Department—who has been treating and supervising the SVP for the duration of his or her civil commitment—has in its well-informed opinion concluded that the SVP no longer meets the SVP definition.  But we do not see how the availability of this second, expedited procedure invalidates the otherwise constitutionally valid two-step procedure that applies when the Department's evaluator does *not* find the SVP suitable for an expedited, unconditional discharge.

The more traditional analysis of procedural due process factors also supports our conclusion that procedural due process does not compel the replacement of the Act's two-step procedure for unconditional discharge with a one-size-fits-all, expedited

22

procedure available to *all* SVPs—including those whom the Department has found not to be suitable for such a discharge.

First, the private interest at stake when deciding between these two procedures is the SVP's liberty interest in being released into the community *without* any supervision and treatment instead of being released in the community *with* such supervision and treatment. Under either procedure, the SVP is in the community and no longer in a secured facility. The additional intrusion of supervision and treatment, while not insubstantial, is not demonstrably greater.

Second, the risk of erroneous deprivation of the SVP's liberty interest using a two-step procedure rather than a one-step procedure is minimal, and the value of the two-step procedure is not just probable but *significant.* The risk of the SVP being wrongly denied unconditional discharge is minimal because the process for assessing eligibility for unconditional discharge is the same under both procedures—it is evaluated under section 6605; in this regard, the SVP's dignitary interest and ability to "present [his or her] side of the story" is also the same under both procedures. Indeed, the only real difference between the procedures is whether the 6605 hearing is held immediately or after a year of conditional release. On the flip side, the value of requiring an SVP to proceed through the two-step procedure is incalculable. "The subtleties and nuances of psychiatric diagnosis render certainties virtually beyond reach in most situations" and "makes it very difficult for the expert physician to offer definite conclusions about any particular patient." (*Addington*, *supra*, 441 U.S. at p. 430.) As a result, the "process of determining whether [an SVP] is prepared for successful," unconditional discharge "into the community is unquestionably

23

fraught with uncertainty." (*Beck*, *supra*, 47 Cal.App.4th at p. 1683.) The one-year period of conditional release mandated by the first step of the two-step process is valuable because it mitigates that risk—and thereby "protects the public"—"by requiring SVPs [to] demonstrate the ability to spend a year in the community" without revocation of that status (*People v. Smith* (2020) 49 Cal.App.5th 445, 453).

Third, the State's interest in using the two-step process that starts with the one-year period of conditional release is, as noted above, the "strong government interest in protecting the public from those who are dangerous and mentally ill." (*Otto*, *supra*, 26 Cal.4th at p. 214; *People v. Allen* (2008) 44 Cal.4th 843, 857 ["The [Act] was enacted to . . . confine and treat . . . individuals until it is determined they no longer present a threat to society."].)

3.     *Petitioners' arguments*

Petitioners resist our conclusion with what boil down to five arguments.

First, they argue that the two-step procedure violates procedural due process because it hinges an SVP's right to petition directly for unconditional discharge on the arbitrary "whims" of the Director. This argument ignores that the Director is bound by the conclusions and recommendations of the "professionally qualified person" who annually evaluates the SVP, and who is governed by a code of ethics. (E.g., *Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 584 [detailing ethical standards, including the ethical duty to objectivity].) The Director lacks the power to second guess the evaluator (*Landau 2011*, *supra*, 199 Cal.App.4th at pp. 37-39; *Smith 2013*, *supra*,

24

212 Cal.App.4th at p. 1399, fn. 2), which all but eliminates the risk of the Director injecting caprice into the process.

Second, petitioners argue that denying SVPs the power to directly petition for unconditional discharge "effectively" amounts to a "lifetime commitment." This argument ignores the plain text of the Act, which entitles an SVP, without a favorable Department evaluation, to petition either (1) for unconditional discharge under section 6605 after one year of conditional release (§ 6608, subd. (m)), and (2) to petition for conditional release at any time (§ 6608, subd. (a)).

Third, petitioners argue that the United States Supreme Court's decision in *Hendricks*, *supra*, 521 U.S. 346, dictates a holding in their favor. They are wrong. To be sure, *Hendricks* upheld Kansas's sexual violent predator law, and that law had a provision—unlike the Act—which authorized SVPs to petition for unconditional discharge. But *Hendricks* addressed whether the Kansas act was constitutionally defective because its *commitment* procedures authorized commitment based on a finding of a "mental abnormality" rather than a "mental illness" (*id.* at p. 350); *Hendricks* had no occasion to examine the constitutional sufficiency of the Kansas act's *release* procedures. That the Kansas act happened to permit SVPs to file petitions for unconditional discharge played no role in the court's holding or analysis, and thus has no weight here. (*People v. Casper* (2004) 33 Cal.4th 38, 43 ["It is axiomatic that cases are not authority for propositions not considered."].)

Fourth, petitioners argue that there has to be a "tradeoff" whenever our Legislature or the voters amend the Act. As a result, petitioners continue, when the voters in 2006 changed the Act to provide for indefinite confinement rather than a two-year

25

confinement, there needed to be "some sort of offsetting protections to ensure continued ability of SVP defendants to obtain release at the appropriate time." Petitioners are wrong. They cite no authority for the proposition that a statute may be amended only if a change in the statute is accompanied by an "offsetting" change. What is more, petitioners' suggestion that we get into the business of overseeing how legislation is amended is a dangerous one. They ask us to invent and then give ourselves a power to dictate how bills must be amended and then to evaluate each amendment to see it is appropriately "offset" by other provisions. The separation of powers makes this suggestion profoundly unwise if not downright foolish.

Lastly, petitioners argue that granting SVPs the right to directly petition for unconditional discharge is compelled by procedural due process because SVPs have no other available remedy should they cease qualifying as "sexually violent predators" in the interregnum periods between annual evaluations. We reject this argument. As noted above, if the Department develops "reason to believe" that an SVP *at any time* no longer qualifies as an SVP, the Department is obligated to file a petition for habeas corpus relief under section 7250 seeking an unconditional discharge. (§ 6605, subd. (c).) The SVP also has a right to file a habeas corpus petition under section 7250. (§ 7250.) Petitioners assert that 7250's procedures are not as "petitioner friendly" as section 6605's (because SVPs under section 6605 are entitled to appointed counsel, to appointed experts, and to a jury trial where the State is required to prove their continued SVP status beyond a reasonable doubt), that their right to petition for habeas relief under section 7250 is therefore constitutionally inadequate, and that we must therefore

26

construe the Act to permit them to directly petition for unconditional discharge under section 6605.

We reject this argument as well because the central premise of the argument—namely, that habeas procedures for release from custody are constitutionally inadequate to serve as a safety valve unless they are a mirror image (or, at a minimum, comparable) to the procedures used to place the person in custody—is incorrect. A convicted felon petitioning for habeas corpus relief from his conviction is not denied procedural due process merely because the substantive standards and procedures applicable when he seeks release through a habeas corpus petition (where the felon is entitled to appointed counsel only upon making a prima facie case for relief, where he bears the burden of showing that his confinement is unlawful, and where he presents his claim to a judge) are less favorable than those applicable at the trial where he was convicted (where he is entitled to appointed counsel during the entire procedure, where the State bears the burden of establishing his guilt beyond a reasonable doubt, and where the trier of fact is a jury). The same principle applies here, and thus obligates us to reject petitioner's argument that section 7250 is inadequate merely because it does not employ the same procedures as section 6605, which, as noted above, are identical to the procedures used to impose SVP status in the first place. Instead, section 7250—like the writ of habeas corpus generally—was meant to operate as a bona fide safety valve available when new evidence showing that the SVP is no longer a "sexually violent predator" "completely undermines" either the initial finding of SVP status or the Department's most recent annual evaluation (*People v. Johnson* (2015) 235 Cal.App.4th 80, 88-89; *Smith 2022*, *supra*, 75 Cal.App.5th at pp.

344-345).  Where, as here, no such showing has been made, procedural due process is not offended by requiring SVPs to proceed under the Act's usual procedures.

Indeed, were the law to the contrary—such that section 7250's failure to employ section 6605's procedures meant that SVPs were entitled to directly invoke section 6605's procedures at any time—then section 6608 and much of section 6604.9 would be effectively nullified.  But our task is to give effect to the provisions of the Act, not to wipe them off the books.  (*Tuolomne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1039 ["'An interpretation that renders statutory language a nullity is obviously to be avoided.'"].)

## DISPOSITION

The orders are affirmed.

## CERTIFIED FOR PUBLICATION.

_____, J.
HOFFSTADT

We concur:

_____, P. J.
LUI

_____, J.
CHAVEZ